## In the Matter of the Will of GEORGE T. BROKAW, Deceased.

Surrogate's Court, New York County, March 2, 1943.

*Harry J. Ahlheim* for United States Trust Company of New York and another, as executors, petitioners.

*Otis T. Bradley* and *Laurence D. Kieran* for Guaranty Trust Company of New York, as trustee, respondent.

*James J. Mennis* for Clare Luce, as trustee, respondent.

FOLEY, S. This is an application by the executors for a construction of the tax provision of the will and for an apportionment of the Federal and New York State estate taxes pursuant to section 124 of the Decedent Estate Law. The testator died a resident of this county on May 28, 1935. The gross taxable estate, less deductions, was fixed in the Federal estate tax proceeding at the sum of $1,021,283.18. This gross taxable estate was comprised of the decedent's true estate of $775,801.36 and the sum of $245,481.82, representing a portion of an *inter vivos* trust established by the decedent by instrument dated June 12, 1929, for the purpose of discharging his obligation under a separation agreement with his first wife, Ann Clare Booth, now known as Clare Luce. The executors were unsuccessful in their attempt to exclude the entire *inter vivos* trust from the gross taxable estate. They were required to pay a Federal estate tax, including interest, in the total sum of $151,930.69. While no part of the *inter vivos* trust was included in the gross estate in the New York State estate tax proceedings, the executors, in order to secure the benefit of the maximum credit allowance to the estate under the Federal Revenue Act of 1926 (U. S. Code, tit. 26, § 813), were required to pay to the State of New York, pursuant to section 249-n of the Tax Law, an additional tax and interest in the total sum of $12,140.21. The total sum of the taxes paid by the executors and resulting from the inclusion of $245,481.82 of the *inter vivos* trust in the gross estate in the Federal estate tax proceeding was $164,070.90. The executors seek to recover from the trustee of the *inter vivos* trust that portion of the total taxes of $164,070.90 represented by the fraction of which $245,481.82 is the numerator and $1,021,283.18 is the denominator. The amount sought to be recovered is approximately $40,000.

The first paragraph of the will directing the payment of taxes reads: " *First:* I direct that all debts and funeral expenses be paid as soon after my decease as practicable and I do further direct that all inheritance, transfer, estate and similar taxes,

Federal and State, be paid out of the residuum of my estate and be not charged against any legatee, devisee, heir or next-of-kin.''

If the issue presented were dependent solely upon the interpretation to be given to the foregoing clause, an apportionment against the *inter vivos* trust, pursuant to section 124 of the Decedent Estate Law, would be directed. A tax clause of practically identical text was considered by me in *Matter of Ryan* (178 Misc. 1007, affd. 265 App. Div. 1051.) In directing the apportionment of taxes in that case I held that the testatrix, in providing that taxes on testamentary gifts passing under the will be paid out of the residue, intended that all property passing by other form of nontestamentary succession should bear its proportionate share of the taxes.

The trustees of the *inter vivos* trust and the beneficiary thereunder assert that regardless of the interpretation placed upon the tax provision of the will no part of the tax may be apportioned against the trust. They contend (1) that the trustees under the trust instrument are in the position of creditors of the decedent or purchasers and as such are not liable for any portion of the estate taxes assessed upon the decedent's estate; and (2) that the separation agreement entered into by the decedent and his first wife and the trust set up pursuant to its terms constitute a conclusive agreement of settlement between the parties which is binding upon the executors.

Under the separation agreement of January 31, 1929, the decedent agreed to pay his first wife the sum of $2,500 a month for her own maintenance and for the maintenance of the only child of the marriage. The monthly payment was to continue regardless of the future marital status of the parties, and in the event of the death of the husband during the lifetime of the wife the monthly payment was to be '' a charge upon his estate during the term of the life of the wife.'' The parties also waived all other rights which they might have against each other. In the agreement the husband reserved the right to terminate his obligation to make monthly payments of $2,500 to the wife by establishing a trust fund for her benefit in the principal sum of $425,000. Availing himself of this privilege the decedent by instrument dated June 12, 1929, established the trust fund of $425,000, and it was a portion of this fund which was included in the taxable estate of the decedent and for which the executors seek reimbursement.

I hold that the *inter vivos* trust is not liable for any portion of the taxes and that no apportionment can be directed under

section 124 of the Decedent Estate Law. This is not a situation in which the decedent in his lifetime voluntarily created an interest in property which on his death is included in the gross taxable estate and in the absence of a contrary direction in the will must bear its proportionate share of the taxes under section 124 of the Decedent Estate Law. Such interests are usually created by gifts *inter vivos* or *causa mortis,* the establishment of trusts by written indentures, the creation of Totten trusts or joint savings bank accounts with a provision that the survivor shall take all, or the designation of beneficiaries of life insurance policies on the life of the decedent. Here the obligations of the decedent to his first wife were definitely fixed in the separation agreement. The *inter vivos* trust was established by him to fulfill those legal obligations. When the wife accepted the provisions of the trust in satisfaction of her rights under the separation agreement her position was that of a paid creditor of the decedent. As such there could be no apportionment of the taxes under section 124 of the Decedent Estate Law against her or the trust fund. (*Matter of Oppenheimer,* 166 Misc. 522.)

Had the decedent availed himself of another privilege under the separation agreement of establishing by will a trust of $425,000 for his first wife, her status as creditor would have been recognized and no part of the estate taxes apportioned against her trust. (*Matter of Strebeigh,* 176 Misc. 381.) The decedent's agreement with his first wife was that she was to receive the income of a trust of $425,000 and not the income of a trust of $425,000 decreased by $40,000, the amount of taxes sought to be recovered by the executors. The executors are bound by the contract made by the decedent in his lifetime. That the decedent clearly recognized the *inter vivos* trust as a final settlement of all claims by or against his former wife and a discharge of his legal obligations is evident from the fourth paragraph of his will. This paragraph reads: "*Fourth:* As I have created a trust for the benefit of my former wife, Ann Clare Brokaw, I hereby make no provision, bequest or devise for her in this my Will, and she having accepted said trust in full release and discharge of all claims and demands against me or against my estate and of all dower and other property rights, I hereby provide that the trust so made shall be and is in full release and discharge of all dower and other rights of my said former wife in my estate."

The terms of the separation agreement and the trust provisions were as equally binding upon the decedent as upon his

first wife. Once the trust was established the testator was powerless to reduce the principal of the fund. To authorize an apportionment now would have the effect of reducing the trust for the former wife which was established to discharge the decedent's legal obligation.

There is no merit to the contention of the executors that the provision in the trust indenture, authorizing the trustees to pay taxes, includes estate taxes. These directions deal merely with the powers of the trustees and relate solely to income taxes and taxes assessed on any real property constituting part of the corpus of the trust.

Submit order on notice denying the application to apportion taxes in accordance with this decision.