In the Matter of the Will of GEORGE T. BROKAW, Deceased.
UNITED STATES TRUST COMPANY OF NEW YORK et al., as Executors of GEORGE T. BROKAW, Deceased, Appellants.
GUARANTY TRUST COMPANY OF NEW YORK et al., as Trustees under a Deed of Trust dated June 12, 1929, Respondents.

Argued November 20, 1944; decided December 30, 1944.

*Harry J. Ahlheim* for appellants. I. Section 124 of the Decedent Estate Law is a mandatory and administrative provision of the Tax Law; in the absence of a contrary direction in the decedent's will, each tax asset must bear its proportionate share of estate taxes. (*Matter of Walbridge,* 170 Misc. 127; *Matter of Kaufman,* 170 Misc. 436; *Matter of McManamy,* 172 Misc. 392; *Matter of Klein,* 175 Misc. 961; *Matter of Mollenhauer,* 257 App. Div. 286; *Matter of Ryan,* 178 Misc. 1007, 265 App. Div. 1051, 290 N. Y. 933; *Matter of Kalik,* 179 Misc. 872; *Matter of Corlies,* 174 Misc. 459; *Matter of Pennock,* 172 Misc. 10; *Chase National Bank* v. *Tomagno,* 172 Misc. 63; *Matter of Bull,* 175 Misc. 197.) II. There was no obligation on the decedent or his executors to assume the burden of the estate tax, allocable to the trust fund. (*Matter of Kaufman,* 170 Misc. 436; *Matter of Meynen,* 173 Misc. 19; *Matter of Dettmer,* 179 Misc. 844.) III. The issue as to the construction of the tax clause was decided in favor of the appellants. IV. The trustees have failed to prove any intent to exonerate them from tax allocation.

*Laurence D. Kieran* and *Otis T. Bradley* for Guaranty Trust Company of New York, as trustee, respondent. I. The Surrogate made no determination as to the issue raised by respondent that the language of the will and the facts and circumstances surrounding its execution indicated an intention by the testator that no part of the estate taxes should be apportioned against the trust for his former wife and daughter. (*Matter of Smith,* 254 N. Y. 283; *Matter of Bloomingdale,* 278 N. Y. 435; *Matter of Aldrich,* 259 App. Div. 162; *Matter of Golding,* 127 Misc. 821; *Matter of Meynen,* 173 Misc. 19.) II. The will should be construed in the light of all of the facts and circumstances surrounding its execution as indicating the intention of the testator that no part of the estate taxes should be apportioned against the trust he created for his former wife and child.

*James J. Mennis* for Clare Luce, as trustee, respondent. The provisions of the entire will, when considered in the light of the circumstances surrounding the execution thereof, constitute a direction on the part of the testator that there should be no apportionment of taxes against the trust fund. (*Matter of Bloomingdale,* 278 N. Y. 435; *Matter of Aldrich,* 259 App. Div. 162; *Matter of James,* 180 Misc. 441, 267 App. Div. 761; *Matter of Strong,* 171 Misc. 445.)

*Per Curiam.* In the light of circumstances of record surrounding the execution of the decedent's will we read the "First", "Fourth" and "Fifth" paragraphs thereof as declaratory of his intention that no part of any death taxes which might be levied against his estate should be apportioned, under section 124 of the Decedent Estate Law, against funds of the *inter vivos* trust created by a deed of trust, dated June 12, 1929, executed by the decedent, as settlor, and by Guaranty Trust Company of New York and Ann Clare Brokaw, as trustees.

The order should be affirmed, with costs payable out of the estate.

DESMOND, J. (dissenting). The issue here is as to whether or not there should be an apportionment, as against the trustees of an *inter vivos* trust created by George Tuttle Brokaw, now deceased, of the Federal and State estate taxes levied against Brokaw's estate and paid by his executors. The executors in their petition herein, prayed also, in this connection, for a construction of the will. The only reference in the will to estate taxes is in this language: " * * * I do further direct that all inheritance, transfer, estate and similar taxes, Federal and State, be paid out of the residuum of my estate and be not charged against any legatee, devisee, heir or next-of-kin." The Surrogate's written decision did not, at least in form, construe that language, but the Surrogate made it plain that he did not consider that the language above quoted amounted to a direction by the testator that the estate taxes be not apportioned against the trust estate. "If the issue presented" wrote the Surrogate "were dependent solely upon the interpretation to be given to the foregoing clause, an apportionment against the *inter vivos* trust, pursuant to section 124 of the Decedent Estate Law, would be directed." (180 Misc. 490, 492.) We agree with the Surrogate that the tax clause in this will does not establish any intention by the testator to exempt the trust estate from its share of the taxes. By the enactment of section 124 the Legislature changed the policy of this State so as to favor apportionment. It mandated apportionment of death taxes, unless the testator "otherwise directed by the will". To put the final burden of such taxes on the estate itself, rather than on "the persons interested", there must now be found in the will "a clearly expressed intention"

o relieve the beneficiaries from liability for their proportionate 'hares of the taxes. (*Matter of Duryea,* 277 N. Y. 310, 316.) 'his will does contain a positive direction that there be no pro- ating of taxes against " any legatee, devisee, heir or next-of- in." But no word is said forbidding the charging of part of hose taxes against the *inter vivos* trust *res,* which for tax 'urposes, was drawn into and became part of, the Brokaw estate ". The Surrogate cited *Matter of Ryan* (178 Misc. 1007, affd. 265 App. Div. 1051, leave to appeal denied 290 N. Y. 933), where a practically identical tax clause in a will was held insuffi- cient to exempt from tax certain annuity contracts made by the decedent during her life but included in the tax estate. Similarly, apportionment against the trust estate has been decreed in other cases, such as *Matter of Clark* (169 Misc. 202) and *Matter of Pennock* (172 Misc. 10, reversed on other grounds, 285 N. Y. 475), despite the testators' directions that estate taxes be paid out of the residuum and not charged against " any legacies herein contained ", or language of similar import. All this is, we think, in accord with the reasoning of *Farmers L. & T. Co. v. Winthrop* (238 N. Y. 488, 493), decided before section 124 was enacted, that if testator " had intended to make a specific direc- tion to her executor to pay out of her general estate taxes on the transfer of property which did not pass under her will and which was not subject to distribution as part of her estate she would have used language which would have expressed her intention more aptly."

Words like " legatee ", " legacy ", " devisee ", and " de- vise ", when used in wills to control the incidence of death taxes, have always been strictly construed and held not to refer to benefits passing under extratestamentary dispositions. (See *Isham* v. *N. Y. Assn. for Poor,* 177 N. Y. 218, 223.) Nor is there in the will we are here examining any other language showing an intent by this testator to excuse the *inter vivos* trust from liability for its share of the death levies. Article fourth of the will, pointed to by respondents, is merely an announcement by the testator of his reason for including in the will " no provision, bequest or devise " for his former wife, the stated reason being that she had accepted the trust above referred to in full release and discharge of her claims against testator and his estate. Being simply an explanation of Mr. Brokaw's failure to make

his first wife a legatee, article fourth can hardly be regarded as evidence that the testator desired that the first Mrs. Brokaw, though left no legacy, was somehow to be considered ⁓ legatee so as to give her or her trust the benefit of the will's tax clause forbidding apportionment against " any legatee ". Article fifth makes similar explanation of testator's reasons for bequeathing nothing to his daughter. We agree with the Surrogate that there is nothing anywhere in this will justifying a finding that the testator had charged against his true estate the estate taxes on the previously-created trust *res*.

The Surrogate, nonetheless, denied the executors' petition for apportionment against the trust. He pointed out that the trust for the first wife had been created by Mr. Brokaw solely by reason of his obligation to support her, as stipulated in a previously executed separation agreement between them. All that, said the Surrogate, put the first wife into the position of a paid creditor of decedent. Citing *Matter of Oppenheimer* (166 Misc. 522), the Surrogate ruled that there could be no apportionment of death taxes against such paid creditor or against a trust fund set up to discharge the claim of such a creditor. The separation agreement had been signed in January, 1929, about three years before the execution of the will. By it Mr. Brokaw had agreed to pay $2,500 per month during the wife's life for the maintenance of the wife and of the only child of the marriage. There was in it, also, a provision whereby the husband reserved the right to terminate his obligation as to the monthly payments, by setting up a trust in the principal sum of $425,000, the income to go to the wife for her life. In June, 1929, such a trust was so set up in that amount and is the trust against which apportionment of estate taxes is sought herein. The trustor (decedent) reserved a right of revocation but did not exercise such right during his life, with the result that there was, at his death, a transfer of the trust fund within the meaning of the tax laws.

After testator's death a controversy arose between the executors and the Federal taxing officers as to whether or not the trust fund, or any of it, should be included in the " tax estate ", for estate tax purposes. The controversy reached the United States Circuit Court of Appeals. (*Helvering* v. *United States Trust Co.*, 111 F. 2d 576, certiorari denied 311 U. S. 678.) The Circuit

Court held that so much of the trust fund as was applicable to the support of the wife (as distinguished from a part that benefited the daughter) was required by the Federal Revenue Act to be included in the gross estate for tax purposes. Judge LEARNED HAND, for a unanimous court, wrote that testator, by creating the trust, had commuted the annuity stipulated for in the settlement agreement. The wife's acceptance of the trust was, therefore, he pointed out, a " relinquishment of marital rights in the decedent's property ". Such a relinquishment was, under the applicable Federal Statute (U. S. Code, tit. 26, §§ 302, 804) not such a consideration in " money or money's worth " as would exempt the trust from estate tax. As a result of this decision of the Federal courts, some $245,000 of the corpus of the trust was held to be taxable as part of decedent's estate. The whole total of the Brokaw estate was about $1,000,000. Federal and State estate taxes on that total estate were paid by the executors in the amount of about $164,000. If prorating is here ordered, the trustees of the *inter vivos* trust will have to pay about one-fourth of those taxes, or about $40,000.

Thus we have the Federal courts authoritatively determining that these executors had to pay Federal estate taxes on this very trust fund, the executors paying Federal and State estate taxes in accordance with that determination, and no one now denying the propriety of such payment. The will contains no direction against apportionment. It seems to us that there was left to the Surrogate no choice between apportionment and non-apportionment. The statute (Decedent Estate Law, § 124) contains precise directions. Where it appears that the taxes have been paid and there is no clearly expressed testamentary provision contra, the statute says that the taxes " shall be equitably · prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." Compliance with that statute requires a spreading of these taxes· against the beneficial ·interests, including ·the trust estate. That the trust was established to discharge an obligation is immaterial. All of that was settled in the tax litigation and no one now disputes taxability. Apportionment against the benefited persons follows as a direct and necessary consequence of the

inclusion of the transferred property in the gross tax estate, and payment of the tax. If, at this decedent's death, his wife had actually been his creditor in the sense that he owed her a debt, then that debt would not have been added into the gross tax estate, but would have been a deduction therefrom. Such was the situation in *Matter of Oppenheimer* (166 Misc. 522, *supra*), cited by the Surrogate in his opinion herein. Oppenheimer died insolvent, but inclusion of certain ante-mortem insurance transfers resulted in a tax estate. The executors paid the taxes, then tried to have them apportioned against actual creditors whose claims had been deducted in arriving at the taxable net estate. Since those creditors were not " persons interested in the estate " to whom property was transferred at decedent Oppenheimer's death, and since the benefits received by those creditors from the estate had not been taxed, there could of course be no prorating in that case. In the present case, despite the status of the first wife as a sort of paid-up creditor, nonetheless the conditions stated in section 124 as requiring prorating, are all present, and so prorating there must be.

We mention in passing that we have examined the directions in the trust indenture itself as to payment of certain taxes by the trustees, and find therein nothing which has a bearing on the question under discussion herein.

The orders below should be reversed, with costs to all parties payable out of the estate, and the matter remitted to the Surrogate's Court for the entry of an order apportioning the Federal and New York estate taxes as prayed for in the petition.

RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur in *Per Curiam* opinion; DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., and LOUGHRAN, J., concur.

Order affirmed, etc.