ELISABETH B. HALE, PLAINTIFF-APPELLANT, v. THERESA M. LEEDS AND ROBERT L. LEEDS, JR., EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF ROBERT L. LEEDS, DECEASED, DEFENDANTS-RESPONDENTS.

Argued October 20, 1958—Decided November 17, 1958.

278

*Mr. Saul J. Zucker* argued the cause for the plaintiff-appellant (*Messrs. Kristeller, Zucker, Lowenstein & Cohen,* attorneys).

*Mr. Elmer J. Bennett* argued the cause for the defendants-respondents (*Messrs. Carpenter, Bennett & Morrissey,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an action commenced pursuant to *N. J. S.* 3*A*:25–37 and *R. R.* 4:85, for reimbursement of federal estate taxes paid by the plaintiff. The Superior Court, Chancery Division, entered final judgment in favor of defendants, executors of the estate of Robert L. Leeds. Plaintiff appealed to the Superior Court, Appellate Division. While the cause was pending in that court we certified it on our own motion.

Plaintiff is the former wife of decedent. On November 16, 1938 the plaintiff and decedent entered into a formal separation agreement executed in the State of New York. In consideration of the surrender of plaintiff's marital property rights she was to receive a life interest in life insurance policies of her husband totalling $140,000 in face amounts, and a right to invade *corpus* up to $25,000. Thereafter,

on February 25, 1939 plaintiff obtained a final decree of divorce in Florida. The decree did not incorporate or refer to the 1938 separation agreement.

By a formal agreement dated June 4, 1941, the parties modified the 1938 agreement in certain respects. Under the terms of the modified agreement plaintiff was to receive instead of a life interest in $140,000, the entire proceeds outright of three life insurance policies totalling $74,600, if she survived decedent. In the event that she did not survive him the proceeds were to be paid to their children. In addition to the proceeds of the policies the decedent agreed that: "his Estate will be charged with the obligation to pay the sum of Fifteen Thousand Dollars ($15,000) outright to the party of the second part (free from Estate and Inheritance taxes)." Decedent promised to pay the premiums on the life insurance policies and further that: "he will not without the written consent of the party of the second part, change the beneficiary clauses of the said Policies, or any of them, borrow against the said Policies, or surrender the said Policies, or exercise any options in respect of the same or any of them."

Decedent drew his last will and testament on September 15, 1954. He died October 25, 1955, a resident of New Jersey. His will was admitted to probate by the Surrogate of Monmouth County on November 7, 1955. By article Thirteenth of the will he directed the executors to pay to the plaintiff $15,000 "free of estate and inheritance taxes" in fulfillment of his obligations under the 1941 agreement. Article Twenty-fifth of the will relating to payment of estate and inheritance taxes provided:

"I direct that there shall be paid out of my residuary estate all estate, inheritance, legacy, succession and transfer taxes, Federal and State, which may be payable by or assessed against my estate or any part thereof or any bequest or devise hereunder, including not only property passing under this will but also property not passing under this will, such as, but not limited to, policies of insurance on my life, excepting, however, policies of insurance on my life payable to my former wife, Elisabeth B. Hale, which shall bear their share of such taxes as provided by law."

Plaintiff has been paid the $15,000 bequest free and clear of all taxes. But a dispute arose with respect to the proceeds of the insurance policies. The defendants have maintained that plaintiff must pay a proportionate share of the federal estate taxes attributable to the inclusion of the proceeds of the insurance policies in the taxable estate under federal law. Plaintiff disputes liability for a *pro rata* share of the federal taxes, contending that no apportionment may be had and that the proceeds of the policies are not includable in the decedent's federal taxable estate.

There is some factual disagreement concerning whether or not plaintiff originally acquiesced in defendants' contention that she was responsible for the amount of the federal estate taxes apportionable to the $74,600 in life insurance proceeds due her. This dispute need not be resolved. Suffice it to say that her ultimate responsibility for estate taxes is governed by the applicable law at the time of decedent's death and that plaintiff has not waived any rights which she may have in this regard, since her present position was crystallized and made known to defendants prior to the time that the defendants filed their federal estate tax return.

Plaintiff and defendants executed an escrow agreement dated June 15, 1956, whereby plaintiff deposited $20,000 from the proceeds of the policies in an escrow account. The defendants, pending final determination of the amount of taxes apportionable to the policies, were permitted to make withdrawals of the amount deemed necessary to pay federal and state taxes. $5,953.12 was withdrawn from the account by defendants to pay that portion of the federal estate tax represented by the $74,600 in insurance proceeds, which proceeds they voluntarily included in the federal estate tax return as part of the taxable estate. $10,000 of the remainder was subsequently returned to plaintiff. The judgment below directed that any balance not required for federal taxes be returned to plaintiff pursuant to the terms of the escrow agreement. A judgment for reimbursement of the amount paid was denied.

A preliminary question is raised concerning whether plaintiff and decedent agreed, irrespective of any apportionment statute, that plaintiff was to pay any tax liability arising out of the transfer of the insurance proceeds to her. We do not find the agreements unequivocal in this regard. Since we are of the view that the applicable apportionment statutes demand the same result as that which would be reached if the parties intended to impose tax liability on the plaintiff, we prefer to dispose of the controversy on that broader ground.

Assuming for the present the includability of the policies in the taxable estate (of which more hereafter), the issue is whether a *pro rata* share of the tax assessment on the proceeds of life insurance policies payable to a divorced spouse pursuant to a separation agreement must be borne by the spouse. There are two statutes, one state and one federal (which for present purposes may be deemed coterminus in their effect) applicable to such a situation.

(a) The New Jersey statute. *N. J. S. 3A* :25–31 provides in pertinent part:

"Whenever a fiduciary has paid or may be required to pay an estate tax under any law of the state of New Jersey or of the United States upon or with respect to any property required to be included in the gross tax estate of a decedent under the provisions of any such law, hereinafter called 'the tax,' the amount of the tax, except in a case where a testator otherwise directs in his will, and except to the extent where by any instrument other than a will, hereinafter called a 'nontestamentary instrument,' a direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such nontestamentary instrument, shall be apportioned among the fiduciary and each of the transferees interested in the gross tax estate  *  *  *  in accordance with the rules of apportionment herein stated, and the transferees shall each contribute to the tax the amounts apportioned against them.  *  *  *"

The formula for apportionment so far as is here relevant is provided in *N. J. S. 3A* :25–33 :

"In the absence of directions to the contrary, (i) such part of the tax shall be apportioned to each of the transferees as bears the same ratio to the total tax as the ratio which each of the

transferees' property included in the gross tax estate bears to the total property entering into the net estate for tax before the specific exemption, and the balance of the tax shall be apportioned to the fiduciary, the values as finally determined in the respective tax proceedings being the values to be used as the basis for apportionment of the respective taxes; * * *."

(b) *The federal statute*. While ordinarily the Federal Estate Tax Act is unconcerned with the ultimate impact of the estate tax, preferring to look to the estate for primary payment of the tax and leaving to state law to determine the ultimate tax consequences, there are two exceptions to this rule. One relates to powers of appointment. 26 *U. S. C. A.* § 2207. The other exception specifically relates to the portion of the estate consisting of the proceeds of policies of insurance on the life of the decedent. § 2206 of the Internal Revenue Code of 1954, 26 *U. S. C. A., p.* 421 provides:

"Unless the decedent directs otherwise in his will, if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the taxable estate and the amount of the exemption allowed in computing the taxable estate, determined under section 2051. If there is more than one such beneficiary, the executor shall be entitled to recover from such beneficiaries in the same ratio. In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 2056 (relating to marital deduction), this section shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such section."

It is plaintiff's contention that neither the federal nor state apportionment statute apply to her since she is not a "transferee interested in the gross tax estate" under the New Jersey statute or a "beneficiary" under the federal statute. Plaintiff maintains that she is at best a creditor-beneficiary of the estate, having, pursuant to a contract, surrendered valuable marital property rights in exchange for the proceeds of the policies. She views herself, not as

the recipient of a benefaction, but as the collector of a debt.

The two jurisdictions which have had occasion to pass on the question under their local apportionment acts are in conflict. The New York courts have taken the position that the divorced spouse is a creditor of the estate and is therefore under no obligation to contribute to the payment of estate taxes. See *In re Brokaw's Estate,* 180 *Misc.* 490, 41 *N. Y. S. 2d* 57 (*Surr. Ct.* 1943), affirmed on other grounds 267 *App. Div.* 811, 46 *N. Y. S. 2d* 887 (*Sup. Ct. App. Div.*), affirmed 293 *N. Y.* 555, 59 *N. E. 2d* 243 (*Ct. App.* 1944); *In re Strebeigh's Estate,* 176 *Misc.* 381, 27 *N. Y. S. 2d* 569 (*Surr. Ct.* 1941); *In re Cordier's Estate,* 1 *Misc. 2d* 887, 145 *N. Y. S. 2d* 855 (*Surr. Ct.* 1955); *In re Porter's Estate,* 176 *N. Y. S. 2d* 366 (*Surr. Ct.* 1958).

Pennsylvania has decided that its apportionment statute does apply to assets of the estate includable in the federal taxable estate which are paid to a divorced spouse pursuant to a separation agreement. In *In re Stadtfeld's Estate,* 359 *Pa.* 147, 58 *A. 2d* 478 (*Sup. Ct.* 1948), Justice Stern speaking for the Supreme Court of Pennsylvania declared:

"Therefore, even if Mrs. Stadtfeld's status be that of a creditor of her deceased husband's estate for purposes of the state transfer inheritance tax, the controlling fact is that her claim under the separation agreements is not one deductible, under the federal estate tax law, from the value of his gross estate; both the item of $75,000 and the item of $50,000 constitute property 'required to be included in the gross estate of a decedent under the provisions of any such law,' that is, under the estate tax law of the United States. Indeed appellants admit that these sums were so included and that the federal estate tax was due thereon and properly paid; consequently the provisions of the Proration Act automatically apply and the process of apportionment comes immediately into operation since the proration prescribed by the act is *mandatory* unless the testator 'otherwise directs in his will.'" (58 *A. 2d* 481)

We are of the view that *In re Stadtfeld's Estate, supra,* reaches the proper conclusion. Estate taxes tax the privilege of transmitting property at death, not the privilege of receiving it. Therefore the Federal Government imposes primary liability for such taxes on the estate and not on the

beneficiaries. Local state law ordinarily determines (with the two exceptions noted) how the ultimate burden is to be allocated. As stated by the Supreme Court in *Riggs v. Del Drago,* 317 *U. S.* 95, 97, 98, 63 *S. Ct.* 109, 87 *L. Ed.* 106 (1942)

"We are of the opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax;"

The New Jersey Apportionment Statute was enacted to correct what was deemed to be the inequities of the common law rule, *i. e.,* in the absence of a clear *contra* intent on the part of the testator, the residuary estate was to bear the burden of federal estate and state inheritance taxes imposed against decedent's taxable estate. *Morristown Trust Co. v. McCann,* 19 *N. J.* 568 (1955). The Apportionment Statute was designed to change the common law presumption where the intention of the testator was unclear or unavailable. The statutory scheme simply stated is this: In the absence of a clear contrary intent, the recipients of assets properly includable in the taxable estate of a decedent under the federal or state taxing acts shall pay a share of the tax in the proportion that the assets so received have contributed to the tax liability.

It should be noted that the New Jersey Apportionment Statute makes no distinction of status with respect to transferees of the assets of the estate. It refers simply to persons interested in the estate. The same is true with respect to the federal statute which declares that the beneficiary of a life insurance policy must pay the taxes assessed thereon when the policies are includable in the taxable estate. The proration formula is automatically applied to assets in the hands of a transferee which are not deductible from the gross estate.

An apportionment statute is not a taxing statute. *Parlato v. McCarthy,* 136 *Conn.* 126, 69 *A. 2d* 648 *(Sup.*

*Ct. Err.* 1949); *Annotation,* 137 *A. L. R. 2d* 199, 205 (1954). Any equities in plaintiff's favor arising from her status under the separation agreement are policy matters for the Federal Government to resolve in determining whether or not to allow the estate a deduction for amounts so paid. In short, they are equities to be resolved by the statute creating the tax and are not relevant to determining whether or not apportionment should be decreed, since the starting point for that problem begins where the federal act leaves off.

We conclude that once the decision is made by the federal authorities to include the amounts payable under the separation agreement in the taxable estate then, and in the absence of an expressed intention to the contrary on the part of the decedent, the design of the Apportionment Act is to have the divorced spouse absorb the share of the estate tax attributable thereto, rather than the other beneficiaries of the estate.

The plaintiff next raises the question of whether the proceeds of the policies were properly includable in the federal taxable estate. Section 2043(*b*) (26 *U. S. C. A., p.* 311) of the Federal Estate Tax Act provides:

"(b) Marital rights not treated as consideration.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.' "

But the plaintiff maintains that currently the proceeds of the insurance policies would not be taxable under the Federal Gift Tax Act. *Section* 2516 (26 *U. S. C. A., p.* 502) of that act, effective January 1, 1955, provides:

"Where husband and wife enter into a written agreement relative to their marital and property rights and divorce occurs within 2 years thereafter (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement—

(1) to either spouse in settlement of his or her marital or property rights, or

(2) to provide a reasonable allowance for the support of issue of the marriage during minority,

shall be deemed to be transfers made for a full and adequate consideration in money or money's worth."

It is plaintiff's contention that the Federal Estate and Gift Tax Acts should be read *in pari materia* and that *section* 2516 of the Internal Revenue Code manifests a congressional intent that such transfers should not be taxable under the estate tax. Relative to this problem, see *Commissioner of Internal Revenue v. Wemyss*, 324 *U. S.* 303, 65 *S. Ct.* 652, 89 *L. Ed.* 958 (1945); *Merrill v. Fahs*, 324 *U. S.* 308, 65 *S. Ct.* 655, 89 *L. Ed.* 963 (1945); *Harris v. Commissioner*, 340 *U. S.* 106, 71 *S. Ct.* 181, 95 *L. Ed.* 111 (1950); *Oliver and Buckley*, *"The Marriage Undone: Taxwise Part II,"* 42 *Calif. L. Rev.* 408, *p.* 433 *et seq.* (1951); *Pedrick*, *"The Gift Tax Jurisdiction of The Divorce Court,"* 45 *Ill. L. Rev.* 177 (1951). For a complete discussion of the question raised by plaintiff, see *Lowndes and Kramer, Federal Estate and Gift Taxes, Part* I, *c.* 13, § 3, *Part* II, *c.* 9, §§ 5–7 (1956).

We will not, however, resolve the problem for the following reasons: As previously stated, ordinarily a proration proceeding begins where the federal determination leaves off. Complicated problems of federal taxation, involving debatable policy choices, should not be determined in the state courts. Such problems should be left initially to the Treasury Department of the Federal Government, with ultimate review in the federal courts. This view was expressed in *In re Buckhantz' Estate*, 120 *Cal. App. 2d* 92, 260 *P. 2d* 794 (*Sup. Ct.* 1953) where the court declared:

"* * * The court is bound by the actual fact of inclusion or exclusion of property by the federal taxing authorities. The task of proration begins at the point where the taxing authorities end their duty of fixing the estate tax; it takes the accomplished fact of taxation and then prorates the burden on the actuality of the tax." (260 *P. 2d* 797)

For further authority see *Annotation*, 137 *A. L. R. 2d* 199, 250 (1954). This is not to say that an executor cannot be

held liable as a fiduciary for paying a clearly improper tax. Incident to an allegation of fiduciary misconduct the state court may have to determine a federal tax question. As stated in *In re Zahn's Estate*, 188 *Misc.* 856, 69 *N. Y. S.* 2d 829 (*Surr. Ct.* 1946), reversed on other grounds, 273 *App. Div.* 476, 77 *N. Y. S.* 2d 904, affirmed 300 *N. Y.* 1, 87 *N. E.* 2d 558 (*Ct. App.* 1949):

"But in any case this court proceeds in an apportionment of taxes on the basis of 'the actual fact of inclusion or exclusion of property by the taxing authorities.' *Matter of Kaufman's Estate*, 170 *Misc.* 436, 445, 10 *N. Y. S.* 2d 616, 626. There is no room in a proceeding for apportionment to reargue the fact of taxability. That is determined once and for all in the tax proceeding proper. There may remain open to the beneficiaries of a taxed fund an opportunity to question the executor's conduct of the tax proceeding and to seek a surcharge of his accounts. If, for instance, it were shown that there had been gross neglect by the fiduciary in the tax proceeding the general power of the court to regulate the conduct of a fiduciary and to compel a faithless fiduciary to make good a loss occasioned by his dereliction could be invoked to compel restitution to the beneficiary compelled to pay an excessive tax. * * *" (69 *N. Y. S.* 2d 837-838.)

In the instant case some question is raised concerning the fact that the defendants voluntarily included the proceeds of the insurance in the federal estate tax return, especially in light of plaintiff's insistence that the proceeds were deductible from the gross taxable estate. The defendants did append a notation on the estate tax return that plaintiff disputed the includability of the insurance proceeds in the gross estate. The estate tax return, together with a memorandum prepared by plaintiff's attorneys was filed on January 18, 1957. Thereafter, at an audit of the estate conducted on November 22, 1957 plaintiff's attorneys orally presented arguments to the agent of the Internal Revenue Service and submitted a supplemental memorandum defining her position. The District Director of Internal Revenue subsequently decided that the proceeds were includable. There is a factual dispute in the affidavits submitted in this proceeding as to whether plaintiff's arguments were denied on

their substantive merits or whether, as plaintiff's attorneys state: "the Internal Revenue Service decided to ignore our efforts to intervene on Mrs. Hale's behalf, claiming that its negotiations were exclusively with the executors, and as long as the executors saw fit to include the insurance policies in decedent's taxable estate, the Federal agency would not refuse the tax based upon such voluntary includibility by the executors."

The voluntary inclusion of the policy proceeds in the tax return by the defendants does not, under the circumstances of this case, necessitate a departure from the ordinary rule that the federal tax questions should not be litigated in the state forum. It should first be noted that, as we read the applicable law, an avenue for the litigation of the question still exists in the federal sphere. Where an item has been voluntarily included in the tax return a claim for a refund based upon the contention that the item was originally erroneously included may be brought within three years of the date on which the return was filed or within two years after the payment of the tax, whichever period is later. 26 *U. S. C. A.* § 6511(*a*) as amended. (The return herein was filed on January 18, 1957.) The determination of the District Director to reject plaintiff's contention would not seem to work any estoppel on the right to bring a claim for refund under the federal law. See *Bank of New York v. United States,* 170 *F. 2d* 20 (3 *Cir.* 1948), and authorities therein cited. We assume that, if on any subsequent claim for a refund, an objection is raised as to plaintiff's standing to file the claim (and she does not wish to contest that fact), the defendants will on demand from the plaintiff and upon posting of security sufficient to indemnify them for attorney's fees and costs of suit, bring the action in their own name.

If we are in error as to the availability of a federal remedy for reasons not presently apparent, still no reason exists for not accepting as conclusive the District Director's determination, either upon substantive or procedural grounds, to include the proceeds of the policies. No finding of bad

faith on the part of the defendants can be made simply because they voluntarily included the insurance proceeds in the return. Their deductibility from the gross estate was at least debatable, and in this posture it might well have been the course of prudence to initially include them, thereby avoiding possible penalties and interest attendant upon a deficiency assessment by the District Director. Plaintiff at the time the return was filed was fully cognizant of the fact that under the state and federal apportionment statutes the ultimate burden of the tax might well fall upon her. Upon the denial of her contention, either upon procedural or substantive grounds, she was obligated to ascertain what review procedures were available. If she determined that she had no standing to review the determination, or that her standing was in doubt under the federal law, she was further obligated to demand that the executors prosecute the action in their name with the tender of indemnification for attorney's fees and costs of suit.

The defendants, under all the circumstances of this case, were not obliged to make a claim, on their own initiative, which depended for its resolution upon a question which might well be carried to the Supreme Court of the United States.

The judgment below is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.