In the Matter of the ESTATE of
Alice R. OGBURN, Deceased.

Howard Y. RANDLER, Mabel Seely, Daisy
Sammis, Leona Russell, Frances R. John-
son and Frances R. Johnson, Administra-
trix of the Estate of Bertha Kleiser, De-
ceased, Appellants,

v.

Douglas B. OGBURN, Individually and as
Executor of the Estate of Alice R. Ogburn,
Deceased, and Cynthia K. Ogburn, Douglas
B. Ogburn II, and David Scott Ogburn, Ap-
pellees.

No. 3424.

Supreme Court of Wyoming.

Oct. 15, 1965.

C. L. Bates, Rawlins, for appellants.

C. A. Brimmer, Jr., of Brimmer & Brimmer, Samuel T. Ishmael, Rawlins, for appellees.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

The will of Alice R. Ogburn, deceased, disposed of real and personal property appraised in her probate estate in the sum of approximately $238,000. Out of that property a special devise was made to her foster son, Douglas Bell Ogburn, of certain real estate valued at $80,000 and a special bequest of certain stocks valued in the approximate sum of $62,000 was made to his children. A brother and five sisters of decedent were made the residuary devisees and legatees. In addition to the above-described property passing under the will, the foster son, as a result of the death of testatrix, acquired ownership of jointly held property valued at approximately $12,500 and proceeds of insurance policies in the sum of $20,000. The foster son was named as executor of the estate and qualified and acted as such during the times herein. In rendering his final account as executor, the foster son undertook to charge the residuary estate with the full amount paid for Federal estate tax and the full amount paid for Wyoming inheritance tax. Exceptions to the accounting treatment accorded such items were duly taken by the residuary legatees. After hearing, the trial court approved the final accounting in all respects and a decree of distribution was entered on that basis. From that decree the residuary devisees and legatees appeal. For convenience we shall hereafter usually refer to the brother and sisters as appellants and to the foster son and his children as appellees.

The ultimate questions presented, as we view it, may be summarized as follows:

1. Did the will contain a sufficient directive against apportionment of the Federal estate tax in the manner prescribed by the Uniform Estate Tax Apportionment Act, Ch. 171, S.L. of Wyoming, 1959 (§§ 2–336 to 2–346, W.S.1965 Cum.Supp.), with respect to (a) the testamentary gifts made to appellees and (b) to the nontestamentary gifts of the joint property to the foster son?

2. Did the will contain a sufficient directive against apportionment of that part of the Federal estate tax levied upon the proceeds of insurance policies in the manner prescribed by the Internal Revenue Code of 1954, 26 U.S.C.A. § 2206 (1955)?

3. Did the will contain a sufficient directive to shift the burden of payment of State inheritance taxes from the devisees and legatees of property transferred by the will, as the statute provides, to the residuary estate?

In this connection we should state that the parties, for purposes of argument with re-

spect to the questions relating to Federal estate taxes, made no effort to segregate into component parts the three classes of property that were included in decedent's taxable estate and, although recognizing that the enumerated specific questions exist, simply took the position that the language of the will either did, or did not, contain a directive against apportionment of the Federal tax as a whole. For reasons soon to be stated we believe that the views of the parties are not entirely correct and hence the necessity to state the questions with preciseness.

The clause of the will that brought about this controversy states:

"FIRST: I direct the payment of all my just debts, taxes, funeral expenses and expense of administration of my estate."

Following this are articles "THIRD" and "FOURTH" making the specific devises and bequests to the foster son and his children, and article "FIFTH" granting the residuary estate to the brother and sisters of the testatrix. For our purposes that is the sum and substance of the will.

### The Federal Taxes

As an initial approach to the matter of apportionment of Federal estate taxes we point out, as indicated above, that the public policy of this State, as declared by the legislature, is to apportion such taxes to the persons benefited. Section 2 of the Act, supra, succinctly lays down that proposition. It provides:

"Unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment shall be made in proportion that the value of the interest of each person interested in the estate bears to the total value of the interests

of all persons interested in the estate. The values used in determining the tax shall be used for that purpose."

The statute accomplishes three general purposes. First, it preserves the inherent and recognized right of a testator or testatrix to designate the fund from which such taxes are to be paid. Secondly, it abrogates the common-law rule that, absent such a designation, the burden of payment was first to be imposed upon the residuary estate. Thirdly, and again absent a directive in the will to the contrary, it apportions the tax—without regard to special or general devises and bequests—commensurately to those benefited by the gifts of property upon which the Federal tax has been imposed.

We are one of three states which have adopted the Uniform Estate Tax Apportionment Act, as it relates to Federal estate taxes.[1] With one exception, so far as we can determine, In re Crozier's Estate, 105 N.H. 440, 201 A.2d 895, which is not particularly helpful here in view of the variance in the language used in the will, the Uniform Act has not been subjected to judicial scrutiny. Nevertheless, we are not without guidance in the matter. Over one-half of the states have enacted laws of similar import and the aim of the commissioners was to incorporate into the Uniform Act the most desirable features of the several state acts.[2] There are innumerable cases[3] from those states construing directive tax clauses of a will in the light of statutory provisions, and while there is diversity in the result reached because of the variance in the language used, there is much unanimity in the observance of certain general principles for purposes of construction.

Practically all of the cases agree that a directive against apportionment should be expressed in clear and unambiguous language. Depending, of course, upon

1. The other states are New Hampshire and Michigan. 9A, Uniform Laws Annotated, § 1(a), p. 183 (1964 Cum.Supp.).

2. Handbook of the National Conference of Commissioners on Uniform State Laws, p. 220 (1958).

3. For example, see Annotations 37 A.L.R. 2d 7, et sequitur, and 15 A.L.R.2d 1218, et sequitur.

the complexity of the testamentary plan a few simple words may suffice to effectuate that purpose. It is essential, however, that the words, or combination of words, used in the will sufficiently indicate an intention against apportionment. In case of doubt the burden of the taxes must be left where the law places it. See A.L.R. Annotations, supra. It has been said that a sufficient tax clause should expressly state "(1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted." 28 Am.Jur., Inheritance, Estate, and Gift Taxes, § 488, p. 353. Surmounting the foregoing rules is the paramount rule that the intention of the testator or testatrix is to be ascertained, if possible, from the meaning of the words used in the context of the entire will. White v. Wyoming National Bank of Casper, Wyo., 368 P.2d 960, 963, 100 A.L.R.2d 1044; In re Boyd's Estate, Wyo., 366 P.2d 336, 337. A representative elaboration of the rule of intention is stated in Succession of Jones, La. App., 172 So.2d 312, 316, writ of review refused 247 La. 718, 174 So.2d 131, wherein it was said:

> "With reference to tax clauses in wills, courts are bound to regard all words in their usual and most known signification, according to their natural and reasonable meaning. * * *
>
> "To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. * * *"

Once ascertained, the intention must govern, In re Gilchrist's Estate, 50 Wyo. 153, 58 P.2d 431, 60 P.2d 364; provided, of course, that the result reached is not contrary to law, In re Armstrong's Estate, 56 Cal.2d 796, 17 Cal.Rptr. 138, 366 P.2d 490, 493; National State Bank of Newark v. Stewart, 135 N.J.Eq. 603, 39 A.2d 435, 437.

Beyond the foregoing aids to construction, the authorities are not too helpful.

The results reached in all of the cases vary in accordance with the circumstances present. For example, our search and apparently the search of counsel for the parties have failed to disclose a case wherein an appellate court passed upon a tax clause essentially the same as the tax clause before us. To illustrate, appellees place great reliance upon the case of In re Bourquin's Estate, 87 Colo. 144, 286 P. 114, 115, which dealt with the State inheritance tax. The tax clause there said:

> " * * * 'After paying all court costs, taxes and administrators fees, I hereby give [et cetera] * * *'"

The court remarked that the phrase "all taxes" meant what it said. However, we would immediately point out that the phrase was in no way qualified by other language. That is not true in our case. Here the will goes on to say, "of my estate." The distinction is fully discussed in Norton v. Jones, Tex.Civ.App., 210 S.W.2d 820, 821, 822. We might also say that the cases cited to us by appellants, such as In re Grondin's Estate, 98 N.H. 313, 100 A.2d 160, 162, 163, are premised on language substantially different from the language contained in the tax clause before us.

It should be kept in mind also that the burden of establishing a basis for non-apportionment rests upon those contending against the statute. In re Pepper's Estate, 307 N.Y. 242, 120 N.E.2d 807, 811.

Turning now to article "FIRST" of the will, stripped of irrelevant language in order to reach the tax clause, it is provided "I direct payment of all my * * * taxes * * * of my estate." We by no means commend this clause as a model directive against apportionment. It is a superficial, artless, and inept expression relating to this important and crucial element of a testamentary plan prepared by a nonresident attorney confessedly unfamiliar with the applicable laws of Wyoming.

As appellants point out, the tax clause fails by direct language clearly to specify the nature of the taxes embraced within the clause, the source from which the taxes af-

fected were to be paid, and the persons interested in the estate who were to receive benefits freed of the burden of taxes. Such deficiencies, of course, prompted the present litigation. Furthermore, as we indicated above, there is some basis under the authorities for appellants' contention that such lack of clarity condemns the clause as an enforceable directive against apportionment or, at least, when related to the matter of the purpose intended, demonstrates that neither the testatrix nor the scrivener of the will had in mind the importance of fitting death taxes into the testamentary plan.

Nevertheless, we think appellants' concept is too narrow. To adopt it without reservation would be to ignore the critical question of just what testatrix did intend by use of the words "all my taxes of my estate." Surely, those words meant something more than appellants are willing to concede. To hold as appellants argue that the language embraced only ad valorem taxes would be improper for the reason that it would result in regarding such language as mere surplusage. The statutes treat ad valorem taxes as debts of a decedent, to be paid by the executor the same as any other debt, whether so directed or not. On the other hand, however, neither do we accept appellees' version that the word "all" because used in conjunction with the word "taxes" must be taken in a literal sense as embracing all taxes, including all death taxes. True, the word "all" is a general term, comprehensive in scope. If it stood alone with the word "taxes" it might possibly bear the stress which appellees place upon it. However, as previously noted, it does not stand alone. It is qualified by the words "my taxes" and the words "of my estate." To ignore the qualifying language would also be to ignore fundamental tenets of construction. In re Lendecke's Estate, 79 Wyo. 27, 329 P.2d 819; State Board of Equalization v. Courtesy Motors, Inc., Wyo., 362 P.2d 134, 136. As we view it, the proper answer lies somewhere between the divergent contentions of the parties.

■ Reminding that we are presently considering the relationship of the language used to the apportionment of the Federal estate taxes, an important consideration is the nature of the tax. Unlike our inheritance tax, the tax is not imposed upon the privilege of the devisees, legatees, and heirs to take and receive an interest in property from a decedent. Rather it is a tax imposed upon the interest of a decedent which ceased by reason of death thus causing the transfer of such interest to the recipients thereof. Young Men's Christian Ass'n of Columbus Ohio v. Davis, 264 U.S. 47, 44 S.Ct. 291, 292, 68 L.Ed. 558; In re Setrakian's Estate, 169 Cal.App.2d 795, 338 P.2d 247, 250; Succession of Jones, La.App., 172 So.2d 312, 316, writ of review refused 247 La. 718, 174 So. 2d 131. In other words, the tax might be described as a tax on the privilege of transferring an interest in the property upon death, In re Vanderbilt's Estate, 281 N.Y. 297, 22 N.E.2d 379, 387, affirmed Whitney v. State Tax Commission of State of New York, 309 U.S. 530, 60 S.Ct. 635, 84 L.Ed. 909, which generally is understood as an obligation imposed upon the transferor.

■ When the nature of the tax is taken into consideration, together with the fact that testatrix, over the years, was a successful and experienced businesswoman, we think it must be assumed that she had some familiarity with the impact of death taxes and that by the language "all my taxes of my estate" she did intend to embrace at least a portion of such taxes. Further, by inclusion of the tax clause in the usual ritualistic and introductory portion of the will directing payment of debts, expenses, et cetera, which when possible are ordinarily satisfied from the residuary estate, it seems clear that testatrix also intended that the death taxes embraced within the language were to be paid from the same source. Annotation 37 A.L.R.2d 124.

That leaves for consideration the portion of the taxes affected. As stated above, we think that question cannot be precisely answered without relating the tax clause to each segment of the testatrix's property

transferred as a result of death and upon which the tax was levied, i. e., testamentary gifts, nontestatmentary gifts, and proceeds of insurance policies.

In fact the necessity for so doing seems inherent in the distinction made under the laws of Wyoming between what we shall term the "taxable" estate defined in Ch. 171, § 1(a), S.L. of Wyoming, 1959 (§ 2–337(a), W.S.1965 Cum.Supp.), as being "the gross estate of a decedent as determined for the purpose of federal estate tax" and the "probate" estate, which as commonly understood consists of the property owned by a decedent at the time of death which is transferred in accordance with the provisions of the will or statute relating to intestacy through the processes of the probate court. While both estates have some interrelation, there is a substantial difference. The "probate" estate, as indicated, is concerned with the devolution of a decedent's interest in property at the time of death which does not occur otherwise than by the will or the intestacy statute. A property interest such as an unsevered interest in a joint tenancy forms no part of the "probate" estate. Witzel v. Witzel, Wyo., 386 P.2d 103, 109. On the other hand, Federal law for purposes of determining the "taxable" estate, while including all of the assets of the "probate" estate, is not concerned with the manner in which property interests of a decedent are otherwise transferred, and interests such as the joint tenancy mentioned are treated as integral parts of a decedent's estate for purposes of the Federal estate tax. That such a distinction has special significance in considering the question before us can readily be seen. A somewhat ambiguous tax clause may contain language sufficient to disclose an intent on the part of the testator or testatrix to shift the burden of the Federal estate tax levied upon decedent's property passing under the will and yet be insufficient to shift the tax levied upon the trans-

fer of a decedent's interest in property which is not controlled by the will. Such a possibility is much too important to be overlooked. Furthermore, the authorities sustain the approach we are here taking, Union Trust Co. v. Watson, 76 R.I. 223, 68 A.2d 916, 919; In re Armstrong's Estate, 56 Cal.2d 796, 17 Cal.Rptr. 138, 366 P.2d 490, 494; In re Cudahy's Will, 251 Wis. 116, 28 N.W.2d 340, 341, 342; Annotation 15 A.L.R. 2d 1216; and we find nothing in the apportionment statute that would cause us to reject such an approach.

Relating the tax clause to the testamentary gifts, we are inclined to the view —based on the foregoing general discussion —that testatrix must be understood as having this portion of the taxes in mind when she referred to "my taxes of my estate" and that such language, although not entirely clear, sufficiently expressed the intention of testatrix to direct against statutory apportionment of the taxes imposed on such gifts. It is only by such an interpretation that force and effect can be given to such language, and as stated above we have concluded that this must be done. We are not disposed, however, to go further than that.

Just as testatrix must be assumed to have been familiar with the tax imposed upon the transfer of the property in her estate in accordance with the will, it must likewise be assumed she was familiar with the fact that a tax would be imposed upon the nontestamentary gift of the joint property to her foster son. As stated, such property formed no part of her probate estate, and that testatrix so understood can also be assumed. Yet no mention is made of an interest in property passing other than by the will, as a result of the death. Nor do we find language in the will from which a purpose to shift the burden of such tax to appellants can be inferred, a purpose which is required clearly to appear. The dominant

words are "my estate." That such phrase fails to establish a basis for nonapportionment of the tax here being discussed seems well established by the authorities. In Union Trust Co. v. Watson, 76 R.I. 223, 68 A.2d 916, 919, the court had this to say:

"We think that the testator's expression 'my estate' in his later will has a very definite and explicit meaning. Such expression, it has been said, 'has a fixed and limited meaning; it is positive, clear-cut and free from doubt. It conveys an inference of existing title or ownership in the maker of the phrase and leads to the single conclusion that he had in mind the payment only of such taxes which might be levied upon his testamentary gifts or devises.' * * *"

In In re Leonard's Estate, 9 A.D.2d 1, 189 N.Y.S.2d 422, 423, the court was confronted with even more direct language in that testator had provided for payment of estate taxes "as may be assessed against my estate." In holding such phrase insufficient as a directive against apportionment, the court said:

"The necessity of a direction against apportionment that will be both 'clear and unambiguous' seems, in reason, even stronger in the case of taxable transfers *dehors* the instrument in which the supposed direction is sought * * *." (Italics in original.)

In view of the foregoing we think the only reasonable interpretation of the will which can be reached is that by the language testatrix could have intended nothing more than a shifting of taxes imposed upon the property passing under the will.

█ With respect to the proceeds of insurance policies we would remind that Congress has singled out this particular segment of a taxable estate for special treatment and has prescribed the manner in which the taxes imposed thereon are to be apportioned "unless the decedent directs otherwise in his will." 26 U.S.C.A. § 2206

(1955). Thus, the matter of insurance raises a Federal question rather than a question under our apportionment statute. A state statute "begins where the federal act leaves off." Hale v. Leeds, 28 N.J. 277, 146 A.2d 216, 221. However, that does not mean that the point cannot or should not here be decided. The question involves a surcharge to certain of the executor's accounts, a controversy fully within the jurisdiction of the probate court. Thus we perceive no sound reason why this court should not pass upon the question, in keeping with Federal law. As to this we find no decisions of the Federal courts authoritatively determining what is or what is not a sufficiently expressed directive.

Nevertheless, we are persuaded that those courts would subscribe to the general legal principles heretofore mentioned. As we view it, all that has been said above concerning nontestamentary gifts is equally applicable here. Probably more so because insurance policies are a special species of property. Johnson v. First Nat. Exchange Bank of Roanoke, 181 Va. 617, 26 S.E.2d 86, 88. Seldom are they spoken of as any part of an estate. In Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900, 903-904, the court emphasized such fact and pointed to the total lack of reference in the will to insurance beneficiaries or to the proceeds of such policies. It was principally on that basis that the court held the testator did not direct "otherwise in his will" and the Federal apportionment statute should apply. We hold that such is the case here.

### State Inheritance Taxes

█ Of this, we think little need be said. The statutes imposing such taxes, §§ 39-337 and 39-355, W.S.1957, clearly and specifically place the burden thereof upon the recipients of the testatrix's bounty. In re Young's Estate, 33 Wyo. 317, 239 P. 286, 287. That such was to continue as the public policy of this State was clearly demonstrated when the legislature in adopting the Uniform Estate Tax Apportionment Act in

1959 deleted from the prescribed form any reference to inheritance taxes payable to the State. True, the inheritance tax statute does not take from a testator or testatrix the right to shift the statutory burden to a particular fund, but to accomplish such purpose the directive must clearly appear from the will. That the language here could not possibly constitute such a directive is self-evident. The testatrix refers only to "my taxes of my estate." These were not her taxes, nor were the taxes levied upon her estate. To hold such language to constitute a sufficient directive would be to reach a most inequitable result in clear contravention of the statute that is designed to prevent such a happening. The State taxes paid were attributable entirely to the gifts made to appellees. The amounts received by the appellants were entirely exempt. The executor was clearly wrong in attempting to charge appellants' accounts with such taxes. See Norton v. Jones, Tex.Civ.App., 210 S.W.2d 820; In re Cudahy's Will, 251 Wis. 116, 28 N.W.2d 340, 341, 342; In re Grondin's Estate, 98 N.H. 313, 100 A.2d 160, 162, 163.

### Summation

Our conclusions with respect to the ultimate questions stated above are these:

1(a). The answer must be in the affirmative and the trial court's decree charging appellants with such portion of the Federal estate tax is affirmed.

1(b). The answer is "no" and the trial court is directed to surcharge the account of the foster son with the proper portion of the Federal estate tax and to relieve appellants from payment thereof.

2. The answer is "no" and the trial court is directed to apportion the tax in keeping with the provisions of 26 U.S.C.A. § 2206 (1955).

3. The answer is "no" and the trial court is directed to surcharge the accounts of appellees with the full amount paid for State inheritance taxes and to relieve appellants from payment thereof.

As so modified the decree is affirmed.