In the Matter of the Application of ADRIAN H. LARKIN, ALBERT STICKNEY and CENTRAL HANOVER BANK AND TRUST COMPANY, as Executors of the Last Will and Testament of HENRY H. ROGERS, Deceased, Petitioners, Respondents, for a Construction of Said Last Will and Testament, Particularly with Respect to Article Seventeenth Thereof, and for Instructions.*

GUY O. WALSER, Special Guardian for PETER ALFRED CONSTANTIN MARIA SALM, an Infant, Appellant; MARY MILLICENT BALCOM, JOHN CALDWELL MYERS, Co-General Guardian of the Property of PETER ALFRED CONSTANTIN MARIA SALM, an Infant, PAULINE ROGERS, CHARLES R. DRESSER, BRADLEY SHERMAN DRESSER, WILLIAM R. COE and Others, as Trustees, etc., of HENRY H. ROGERS, Deceased, HELEN M. BEMIS, NATHAN O. PETTY, as Special Guardian, etc., for ARTURO HENRY PERALTA RAMOS and Others, Infants, Respondents.

Second Department, December 15, 1936.

*Affg. 159 Misc. 86.

*Guy O. Walser*, special guardian [*Herman B. Goodstein* with him on the brief], for the appellant, Peter Salm, an infant.

*Hersey Egginton* [*Harold A. Donegan* and *Arthur W. Siegrist* with him on the brief], for the petitioners, respondents.

*Whitney North Seymour* [*Thomas D. Thacher* and *H. Clinton Corwin* with him on the brief], for the respondent Millicent Rogers Balcom.

*Ramsey Clayton* [*C. Alexander Capron* with him on the brief], for the respondents Pauline V. Rogers, Charles R. Dresser and Bradley Sherman Dresser.

*Walter D. Fletcher* [*J. Hutton Hinch* with him on the brief], for the respondents William R. Coe and others, as trustees, etc., of Henry H. Rogers, Sr., deceased.

*Jerome M. Britchey* [*H. Vincent Smart* with him on the brief], for the respondent Helen M. Bemis.

*Nathan O. Petty*, special guardian, for, the respondents Ramos infants and others.

DAVIS, J. The will of Henry H. Rogers, Sr., was probated in the Surrogate's Court, New York county, on May 28, 1909. Among other things the testator provided therein, in so far as is material here, that his residuary estate should pass to his trustees with directions for paying over the income to his children or their descendants; and giving to his son, Henry H. Rogers, Jr. (sometimes called in the record Colonel Rogers), the power to dispose of a proportionate share of the remainder by will.

Colonel Rogers died on July 25, 1935; and his will was probated in the Surrogate's Court, Suffolk county, on October twenty-eighth of that year. The executors have sought a construction of the terms of his will and the instructions of the court in relation to the payment of State and Federal taxes on the estate under the provisions of article seventeenth, particularly in respect to the funds over which the testator exercised the power of appointment. Simply stated, the question is: Did these funds over which the power of appointment was exercised pass under the will of Colonel Rogers or under that of his father? The answer is important to certain members of the family of this testator.

After making certain legacies in earlier provisions, including those to members of his family, the testator in article twelfth

of the will exercised the power of appointment given in his father's will by directing that the property be divided into three equal shares, to be held in trust, with the annual income to be paid equally (under certain conditions not important here) to his wife, his daughter, and his grandson, Peter Salm, an infant. There were provisions concerning disposition of the remainders.

Article seventeenth of the will is as follows: " I direct that all inheritance, transfer, legacy, succession or similar duties or taxes which shall become payable in respect of any property or interest passing under this my last will and testament or any codicil hereto I may make hereafter, shall be paid out of the capital of my residuary estate."

It is said that the testator disposed of his general estate in the manner following: Cash legacies, $810,000; legacies of specific personal and real property, $659,553.04; and the remaining property passed to the residuary estate. The petitioning executors state that they have been advised that in computing the State and Federal taxes it is necessary to include the value of the appointed estate as a part of the gross estate; and that the petitioners are not certain they will have sufficient funds after paying legal obligations to meet the tax payments when due. It was upon this state of facts, with others presently to be stated, that the executors sought the guidance of the court in respect to the construction of article seventeenth and as to whether any part of such taxes should be paid out of the appointed estate.

It sufficiently appears for the purposes of this proceeding that the value of the testator's personal property at the date of his death was $15,297,186.13 (after deducting $10,000 insurance); the real property had an appraised value of $1,805,250, making a total of $17,102,436.13. The estimated value of the property subject to power of appointment was fixed at $9,171,294.18. This makes the gross estate $26,273,730.31. Estimated deductible items, such as claims filed, administration expenses, commissions and attorneys' fees, amount to $3,017,222.27. General and specific bequests and devises aggregated about $1,469,478.04. After deducting the two foregoing amounts, there would remain in the residuary estate of Colonel Rogers, $12,625,735.82. It is said that the State and Federal estate taxes total $13,138,115.14. The amount of the taxes seems startling, but it is not questioned. If all the property passes under the will of Colonel Rogers, and these taxes are to be paid out of his residuary estate, then it is obvious that nothing will remain therein with which to create a trust fund to provide an income payable to members of the testator's family. Of course, the figures given are estimates, and

in some respects are disputed; but they may be accepted at least as an illustrative basis for the determination of the controversy. If it is decided that the estate is separable, and that part passed under the will of Henry H. Rogers, Sr., the taxes will be smaller in amount, for each estate must contribute to the payment of these taxes, or, in other words, there will be apportionment of taxes between the two estates. The practical result is not at all important in reaching a decision as to the rule of law applicable, except as it bears on the probable intent of the testator.

It is necessary first to ascertain the intention of the testator from the language of the entire will. Did he intend by article seventeenth to direct the payment from his residuary estate of taxes on both his own estate and that over which he exercised power of appointment? If so, as it has turned out, the trust provisions for the members of his family would be a gracious but futile gesture. The provisions of the will indicate that the three persons mentioned were the principal objects of his bounty; and that their welfare was his chief concern, constituting the dominant purpose in his mind. It is unnecessary to go into further detail in respect to those to whom he made bequests or devises in smaller amounts, except to say that he recognized obligations of lesser importance. The will was evidently drawn by a skilled lawyer, and the testator must have been well advised. Under such circumstances, it is difficult to believe that the testator had an intent that by paying taxes on the part of his father's estate over which he had power of appointment, from his own residuary estate, his kin would be stripped of the benefactions carefully provided for them in the will. The language used indicates no such purpose. It was the taxes on " any property or interest passing under this my last will " which were to be paid from the residuary estate. In article sixteenth the testator had distinguished between " my property or of any property over which I may be or become entitled to exercise power or powers of appointment (whether by the will of my father * * * or otherwise)." The two estates were obviously separate in his mind. The language he used in article seventeenth makes it apparent that he had his individual property in mind in providing for payment of taxes in respect to property passing under his will.

A will may contain provisions expressly making the appointed property taxable as a part of the estate, treating it as the individual property of the testator. (See *Isham* v. *N. Y. Assn. for Poor*, 177 N. Y. 218. Cf. *Farmers' L. & T. Co.* v. *Winthrop*, 238 id. 488, 493; *Matter of Trainer*, 248 id. 171, 174.) But as to the passing

of property under the power of appointment, the general rule in this State, long existing and unquestioned, is that property appointed by the will of a donee of the power of appointment passes under the instrument creating the power, and not under the will of the donee, the appointees taking their interests under and by virtue of the instrument which raised the power as if their names were in the grant of the power. This doctrine is a recognition of the separate entity of the appointed estate. (*Genet* v. *Hunt*, 113 N. Y. 158; *Matter of Stewart*, 131 id. 274, 281; *Matter of Harbeck*, 161 id. 211, 218; *Herzog* v. *Title Guarantee & Trust Co.*, 210 id. 531, 532; *Guaranty Trust Co.* v. *Halsted*, 245 id. 447, 458–460.) This rule is not affected by tax statutes designed to make an appointed estate subject to tax by creating artificial estates for such purpose of taxation without defining property rights. (*Matter of Adler*, 151 Misc. 338, 341; *Matter of New York Life Ins. & Trust Co.*, 139 N. Y. Supp. 695, 705; affd., 157 App. Div. 916; 209 N. Y. 585.)

We think that it is reasonably clear, both from the circumstances shown and the rule of law applicable, that the estates were separable and that article seventeenth was intended to apply only to the property that passed under the will of Colonel Rogers. There is absence of intent to include the payment of taxes to be assessed against the funds of the father's estate, over which this testator had only power of appointment. The appointees took their interests under and by virtue of the father's will, as if they were named therein. Therefore, there should be apportionment of taxes between the two estates. So the learned surrogate decided; and we are in agreement with his conclusions. There was acceptance of this view by all interested parties except the appealing special guardian. What favorable result of practical value he could obtain in this proceeding by disagreement, we do not presently understand. The question of the validity of the trust for the benefit of the infant, Peter Salm, is not properly before us, and on that subject we express no opinion.

In so far as an appeal is taken therefrom, the decree of the Surrogate's Court should be affirmed, with costs, payable out of the estate, to all parties filing briefs.

Present — LAZANSKY, P. J., CARSWELL, DAVIS, JOHNSTON and ADEL, JJ.

Decree of the Surrogate's Court of Suffolk county, in so far as an appeal is taken therefrom, unanimously affirmed, with costs, payable out of the estate, to all parties filing briefs.