In the Matter of the Estate of ALBERT I. KING, Deceased.

Surrogate's Court, County of New York, February 14, 1967.

*Goodell, Moss & Rose* (*Herbert Rose* and *Ernest L. Mathews, Jr.,* of counsel), for United Jewish Appeal of Greater New York, Inc. *Finch & Schaefler* (*Leon Schaefler* and *Richard H. Pershan* of counsel), for petitioners. *Rene Loeb, Leonard Wacksman* and *Charles J. Block* for respondents. *Arenson & Gelinas* for Federation of Jewish Philanthropies of New York.

S. SAMUEL DI FALCO, S. The executor of the decedent's estate has instituted this proceeding for construction of the decedent's will. The following facts are pertinent to the issues, are undis-

puted and may help bring into focus the difficulties attendant upon a resolution of the problems presented.

The testator, a resident of Paris, France, albeit a citizen of the United States died on March 8, 1966. The value of his gross estate located in New York County at the time of his death was approximately $88,000. In addition there must be included in his estate for estate tax purposes a trust valued at approximately $2,500,000 over which he had a general testamentary power of appointment (Internal Revenue Code, § 2041).

The power of appointment was derived by the decedent from his wife, Grace, also a resident of France and a citizen of the United States who died on April 2, 1963 leaving a will which was admitted to probate in this court. Under her will a marital deduction trust was created of one half of her residuary estate with the income thereof payable to the decedent for life. The principal of the trust in default of his exercise of the power of appointment was payable one third to four named charities and two thirds to a secondary trust for the benefit of their daughter Louise. The only condition placed upon the decedent by his wife with respect to his exercise of the power of appointment was that such power be exercised by a will executed *after* her death. This the decedent failed to do.

To avoid any question as to the law applicable to the administration of Grace's estate due to her residence in France her will contains a direction pursuant to the provisions of section 47 of the Decedent Estate Law providing that New York State law shall apply to the testamentary distributions made therein and to the construction thereof.

Our courts have been consistent in their rulings that the construction of a will insofar as it affects the exercise of a power of appointment is governed by the law of the donor's domicile. (*Matter of New York Life Ins. & Trust Co.*, 209 N. Y. 585; *Matter of Harriman*, 124 Misc. 320, affd. 217 App. Div. 733; *City Bank Farmers Trust Co.* v. *Meyn*, 263 App. Div. 671; *Matter of Vanderbilt*, 180 Misc. 431, affd. 269 App. Div. 820, affd. 295 N. Y. 964; *Matter of Deane*, 4 N Y 2d 326, 331.) In the case at bar, the donor chose the law of the State of New York, the situs of the property, to control the interpretation and construction of her will and that direction is valid and must be complied with. (*Matter of Cook*, 204 Misc. 704, affd. 283 App. Div. 1047; *Matter of Sahadi*, 30 Misc 2d 166, affd. 283 App. Div. 1012; *Wyatt* v. *Fulrath*, 16 N Y 2d 169.) This eliminates from consideration any question of conflict of laws arising out of the decedent donee's nonresidence.

Grace's will and the decedent's will in respect of which a construction is sought are both dated October 1, 1958. The decedent also left a will dated April 11, 1963, some nine days after Grace's death which specifically disposed of his French assets valued at approximately $2,000. The decedent's French will makes no mention of the power of appointment but the decedent's American will specifically states: ''I hereby expressly declare that this will is not to operate as an exercise of the power of appointment given to me in and by the Last Will and Testament of my wife *GRACE KING.''*

The construction sought is concerned with an interpretation of article SEVENTH of the decedent's will which reads as follows: '' SEVENTH: All taxes payable by reason of my death on my estate and on any transfer or other item of value (exclusive of any property over which I may have power of appointment, whether exercised, not exercised or released) shall be paid, without apportionment, as an administration expense out of my residuary estate and shall be limited to the amount which would have been payable on my estate without such appointable property. The entire excess of such taxes over the amount payable in accordance with the provisions of the preceding sentence shall be paid from the principal of my property over which I have power of appointment by the Trustees thereof.'' A reading of the quoted paragraph clearly discloses that the decedent's main concern was in exempting his own estate from the impact of additional taxes caused by the inclusion of the appointive property therein.

The question is whether the testator, who did not intend to exercise the power of appointment and who in fact did not exercise such power, could burden the appointive property with the excess tax generated by the lumping of *his* estate's assets with the appointive property. To put is more simply, although it must be conceded that a testator may place the burden of taxes on nontestamentary property on his own probate estate, it does not necessarily follow that the reverse is true.

Had the testator executed his will after his wife's death pursuant to her testamentary direction with respect to the exercise of the power, the court would have been in a position to hold that there had been a partial exercise by the testator of the power of appointment to the extent necessary to exonerate and exempt his estate from the additional taxes generated by the power of appointment. However, the fact is that the testator did not avail himself of the opportunity to exercise the power of appointment either partially or otherwise and under the circum-

stances the court doubts the validity of his attempt to shift the tax burden to nontestamentary assets over which he had no dominion or control.

A search of authority in support of the proposition that a testator may shift the burden of taxes from his testamentary estate to nontestamentary assets has met with little success. The cases cited by the petitioner in support of this position are not applicable and the general statements made by authors of texts which appear to support the theory are not persuasive and have not been enacted into law by either our State Legislature or the Congress of the United States.

When the testator executed his will on October 1, 1958, he could not exercise any dominion over the appointive property as his power to do so was limited, by the terms of Grace's will, to the execution of a will *after* her death. Only after her death on April 2, 1963 did the testator have the power to dispose of the property by will (Real Property Law, § 148; *Farmers' Loan & Trust Co. v. Mortimer*, 219 N. Y. 290; *Matter of Kennedy*, 279 N. Y. 255; *Matter of Cary*, 44 Misc 2d 929). At that time there was vested in him as an agent of the donor, his wife, only the right to designate the beneficiaries of the fund which would pass directly to the appointees (*Matter of Walbridge,* 178 Misc. 32; *Matter of Baldwin*, 139 N. Y. S. 2d 413; *Hirsch v. Bucki*, 162 App. Div. 659). The testator chose not to exercise the power vested in him and in making that decision the court holds that he lost the right to shift the excess tax burden on his estate to the appointive property. The tax must, therefore, be ratably apportioned between the decedent's residuary estate and the appointive fund (*Matter of Rogers*, 249 App. Div. 238, mot. for lv. to app. den. 273 N. Y. 680), and the executor will be required to pay the taxes allocable to the decedent's own testamentary estate without contribution from the appointive fund.

The second question raised in this proceeding is whether the tax payable on the appointive fund is to be paid out of the fund without apportionment as an administration expense or whether there is to be an apportionment within the fund which would give the charities the entire benefit of the charitable deduction on the property payable to them.

This question is not one which is properly determinable in this proceeding in the donee's estate. Due to the death of the decedent, the trust of the appointive fund is now distributable by the trustees appointed by the donor pursuant to the terms of the donor's will. This court having determined that the taxes must be ratably apportioned between the testator's residuary estate

and the appointive fund, these trustees are now faced with the problem of how and to whom the allocable tax is to be charged and a proceeding to determine that issue should properly be brought by the trustees in the donor's estate. Nevertheless, in order to avoid further litigation with increased expense to both estates and as all parties having an interest in the outcome of the controversy are before the court and have argued the matter and as the donor Grace King's will was admitted to probate here, the court will dispose of the matter in this proceeding.

As the provisions of the testator's will as to the payment of taxes are ineffective with respect to the appointive property and as the directions for the payment of taxes in the donor's will are only applicable to taxes payable in her estate upon her death, the issue must be decided under the existing statutes and by the application of equitable principles.

A dispute exists as to whether the provisions of section 2207 of the Internal Revenue Code or section 124 of the Decedent Estate Law are applicable to the problem presented and as to the interpretation to be given to these statutes in relation to the problem.

There has been general agreement among the courts confronted with the issue that with two exceptions all problems of apportionment of taxes should be determined by the courts of the State of the testator's domicile. These exceptions relate to property subject to powers of appointment and proceeds of life insurance policies. With respect to these it would appear that sections 2206 and 2207 of the Internal Revenue Code would be controlling (*National State Bank of Newark* v. *Nadeau,* 57 N. J. Super. 53; *Kintzinger* v. *Millin,* 254 Iowa 173; *Riggs* v. *Del Drago,* 317 U. S. 95; 55 Col. L. Rev. 261, 264, 289).

Unless there is a contrary direction in the will, section 2207 of the Internal Revenue Code creates a liability in the recipients of the appointive property for the payment of taxes on property over which the decedent had a power of appointment and authorizes the executor of the donee's estate to recover from each recipient their proportionate share of the tax paid. Section 124 of the Decedent Estate Law contains similar provisions, but in addition thereto provides for a credit to be given to each legatee for any exemption granted by the taxing statute to such legatee. Despite the fact that there is no conflict between the statutes if the donee's will is controlling and, as we have found, there is no effective direction with respect to taxes upon the appointive property therein, then the apportionment decreed under section 2207 of the Internal Revenue Code might leave some doubt as to whether the charities are entitled

to receive their appointive share completely free of tax. It appears to this writer at least that the question requires legislative adjustment.

Lacking such legislative direction at this time it is the opinion of the court that equity requires the appointive property now distributable to the charities to be delivered to them free of taxes. In determining the value of the taxable estate under section 2001 of the Internal Revenue Code all bequests and legacies to charities are deductible from the gross estate (Internal Revenue Code, § 2055). The gifts to charity, therefore, not only do not generate any estate taxes but in fact benefit the other recipients of the appointive property by lowering the total of the taxable estate. In *Matter of Shubert* (10 N Y 2d 461, 473) the court quoted with approval the following language from *Matter of Wahr* (370 Pa. 382, 387): " As none of the gifts to the charities contributed to the federal tax burden, it is just and equitable that such charitable gifts should be relieved from the payment of any part of such tax ". This finding is in accord with the expressed Federal and State legislative intent to encourage gifts to charity (*Edwards* v. *Slocum*, 264 U. S. 61; *Gardiner* v. *Hassett*, 63 F. Supp. 853).