Scileppi, J.
Albert and Grace King executed their respective wills on October 1, 1958. Paragraph Eighth of Grace’s will created a marital-deduction trust, the income of which was payable to her husband, Albert, for life. Albert was given a testamentary power of appointment over the principal of the trust which could only be exercised by a will executed after Grace’s death. The principal of the trust, in default of a valid exercise of the power of appointment, was payable one third to four named charities (the respondents herein) and two thirds to a secondary trust for the benefit of their daughter Louise. Grace King died on April 2, 1963 and her will was admitted to probate by the Surrogate’s Court, New' York County.
As' previously stated, Albert King executed a will, dated the same day as his wife’s, disposing of his assets located in New York County. This will is the subject of the instant dispute. By his will, testator left all of his property located in New York County to his daughter outright. The will expressly declares that it is not to operate as an exercise of Albert’s power of appointment. Testator recognized, however, that the appointive property would be included in his estate for estate tax purposes (Internal Revenue Code, § 2041), and he made the following provision regarding the tax burden. ‘ ‘ Seventh : All taxes payable by reason of my death on my estate and on any transfer or other item of value (exclusive of any property over which I may have power of appointment, whether exercised, not exercised or released) shall be paid, without apportionment, as an administration expense out of my residuary estate and shall be limited to the amount which would have been payable on my estate without such appointable property. The entire excess of such taxes over the amount payable in accordance with the provisions of the preceding sentence shall be paid from the principal of the property over which I have power of appointment by the Trustees thereof.”
Testator died on March 8, 1966 leaving a gross estate of *460 approximately $88,000. Since testator never exercised his power of appointment, the principal of the marital-deduction trust, valued at approximately $2,500,000, passed pursuant to the terms of Grace King’s will.
The entire tax on Albert’s estate (exclusive of the appointive property) is approximately $1,600. When the appointive property is- added to the gross estate for estate tax purposes, however, the tax amounts to about $697,000. Albert’s executor and the trustees of the secondary trust for the daughter, relying on article Seventh of Albert’s will, concluded that: (a) the appointive fund should bear the entire excess tax generated by the power, (b) the fund’s share of the tax should be paid one third by the charitable recipients and two thirds by the secondary trust. When some of the charities disagreed with this conclusion, this construction proceeding was brought.
The Surrogate concluded that the testator could not shift the excess tax burden which was generated by the power of appointment to the appointive property. Consequently, he held that the entire tax must be ratably apportioned between the testator’s residuary estate and the appointive fund. He also held that the appointive fund’s share of the tax must, be borne by the secondary trust and the charities must receive their appointive share completely free of tax.
The Appellate Division affirmed. Justice McGiverh dissented in part, being of the opinion that the testator could validly direct that the appointive fund bear the taxes generated by the power of appointment.
We have concluded that the courts below were in error and consequently the order appealed from should be reversed.
Generally speaking, apportionment of taxes among the beneficiaries of an estate, or among persons receiving property which is included within an estate for tax purposes, is a matter of State law (Matter of Zahn, 300 N. Y. 1, 10). There are, however, two exceptions to this general rule. The apportionment of taxes. attributable to nonexempt insurance proceeds and property subject to a power of appointment is governed by Federal law (Riggs v. Del Drago, 317 U. S. 95; National State Bank of Newark v. Nadeau, 57 N. J. Super. 53; Kintzinger v. Millin, 254 Iowa 173; Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 55 Col. L. Rev. 261, 286).
*461 Section 2207 of the Internal Revenue Code deals with the apportionment of taxes generated by a power of appointment. It provides:
"Liability of recipient of property over which decedent had power of appointment.
‘ ‘ Unless the decedent directs otherwise in his will, if any part of the gross estate on which the tax has been paid consists of the value of property included in the gross estate under section 2041, the executor shall be entitled to recover from the person receiving such property by reason of the exercise, non-exercise, or release of a power of appointment such portion of the total tax paid as the value of such property bears to the sum of the taxable estate and the amount of the exemption allowed in computing the taxable estate, determined under section 2052, or section 2106(a), as the case may be. If there is more than one such person, the executor shall be entitled to recover from such persons in the same ratio. In the case of such property received by the surviving spouse of the decedent for which a deduction is allowed under section 2056 (relating to marital deduction), this section shall not apply to such property except as to the value thereof reduced by an amount equal to the excess of the aggregate amount of the marital deductions allowed under section 2056 over the amount of proceeds of insurance upon the life of the decedent receivable by the surviving spouse for which proceeds a marital deduction is allowed under such section.”
The Surrogate correctly concluded that section 2207 controlled, but he was of the opinion that the testator could not burden the appointive property with the excess tax without exercising his power of appointment. To cull from his opinion:
“ [T]he testator did not avail himself of the opportunity to exercise the power of appointment either partially or otherwise and under the circumstances the court doubts the validity of his attempt to shift the tax burden to nontestamentary assets over which he had no dominion or control.
* * *
“ When the testator executed his will on October 1, 1958, he could not exercise any dominion over the appointive property as his power to do so was limited, by the terms of Grace’s will, to the execution of a will after her death. Only after *462 her death on April 2, 1963 did the testator have the power to dispose of the property by will (Real Property Law, § 148; Farmers’ Loan & Trust Co. v. Mortimer, 219 N. Y. 290; Matter of Kennedy, 279 N. Y. 255; Matter of Cary, 44 Misc 2d 929). At that time there was vested in him as an agent of the donor, his wife, only the right to designate the beneficiaries of the fund which would pass directly to the appointees (Matter of Walbridge, 178 Misc. 32; Matter of Baldwin, 139 N. Y. S. 2d 413; Hersch v. Bucki, 162 App. Div. 659). The testator chose not to exercise the power vested in him and in making that decision the court holds that he lost the right to shift the excess tax burden on his estate to the appointive property. The tax must, therefore, be ratably apportioned between the decedent’s residuary estate and the appointive fund ” (52 Misc 2d 1021, 1024-1025).
We are of the opinion that the Surrogate’s interpretation of section 2207 of the Internal Revenue Code is far too restrictive. There is no doubt that the testator could have shifted the burden of tax generated by the power of appointment to the appointive property if he had exercised the power (Matter of Rogers, 249 App. Div. 238, mot. for lv. to app. den. 273 N. Y. 680; Hooker v. Drayton, 69 R. I. 290 [1943]). In the above two cases, the testators were allowed to shift the tax burden to appointive property even in the absence of any statutory authority providing for such apportionment. There it was recognized that, although tax statutes include appointive property in a donee’s estate for the purpose of taxation, a bequest which passes to a beneficiary either through the exercise of a power or by reason of a failure to exercise the power, passes to the beneficiary from the creator and not from the donee of the power. It was also recognized that, if a donee could not shift the taxes generated by the power of appointment to the appointive property, his own estate would be diminished, often to the detriment of the natural objects of his bounty, by taxes on property which was not his and which did not pass under his will.
Clearly, Congress had these very same considerations in mind when it enacted section 2207 of the Internal Revenue Code. Congress, in enacting section 2207, not only mandated a prorata apportionment of taxes between appointive and nonappointive property, but it also gave the donee of the appointive property *463 the option of directing otherwise. The statutory language 1 ‘ Unless the decedent directs otherwise ’ ’ is broad in scope and should be liberally construed. It does not restrict the testator to the option of directing no apportionment. It also allows him to charge the appointive property with more than its prorata share of the taxes (cf. Union Trust Co. v. Watson, 76 R. I. 223 [1949]). This is precisely what the testator in the case at bar did. He directed that the appointive property bear the entire burden of the taxes generated by the power. It does not matter that the testator did not exercise his power, for the considerations which prompted Congress to enact section 2207 are present whether or not the power is exercised. Thus the appointive property must bear the entire burden of the taxes generated by the power of appointment.
We must now determine if the tax payable by the recipients of the appointive fund should be ratably apportioned between the charitable and noncharitable recipients. The Surrogate recognized that section 2207 of the Internal Revenue Code authorizes the executor of a donee’s estate to recover from recipients of appointive property a proportionate share of the tax paid. He was uncertain, however, if Congress intended, in the absence of a specific directive by the donee, to charge charitable recipients of appointive property with a prorata share of taxes attributable to a power of appointment. Lacking what he considered to be a specific directive from the testator and lacking clear legislative intent, the Surrogate concluded that equity requires the appointive property distributable to the charities to be delivered to them free of taxes.
We are of the opinion that the charitable recipients must pay their prorata share of the taxes payable by the appointive fund. In arriving at this conclusion we find it unnecessary to determine if Congress intended to exonerate charitable recipients from bearing their proportionate share of taxes payable by the recipients of appointive property, for section 2207 clearly states that the testator may make a direction which is contrary to congressional intent.
The second sentence of article Seventh of the testator’s will states: “ The entire excess of such taxes [those attributable to the appointive fund] over the amount payable in accordance with the provisions of the preceding sentence shall be paid from *464 the principal of the property over which I have power of appointment ” (emphasis added). We think that it is clear from this language that the testator intended the charities to bear their prorata share of the taxes. The testator did not direct that the taxes attributable to the appointive fund be paid only from that portion of the principal passing to the secondary trust. To the contrary, he treated the principal as a single fund and made no distinction between the shares of principal distributable to the charities and the share distributable to his daughter’s trust.
Respondents, relying on Matter of Shubert (10 N Y 2d 461), argue that article Seventh of the testator’s will does not constitute a clear, unambiguous direction that the charities shall bear their proportionate share of the taxes attributable to the appointive fund. Matter of Shubert (supra) is not controlling. In that case, we held that the charitable recipient of a residuary bequest was exonerated from paying its prorata share of the taxes attributable to residuary assets. There, however, we were applying section 124 of the Recedent Estate Law which provides that ‘ ‘ any exemption or deduction allowed under the law imposing the tax * * * by reason of the charitable purposes of the gift shall inure to the benefit of the person * * * receiving such * * * charitable gift ” unless the testator directs otherwise in his will (emphasis added). Faced with this strong policy of statutory exoneration, we held that the testator’s direction to the contrary had to be clear and unambiguous. In the case at bar, however, we are not dealing with a statute which expresses- a strong policy in favor of exoneration. While it is true that Congress encourages charitable bequests by providing for their deduction from gross estates (Internal Revenue Code, § 2055), it is also true that it has specifically recognized that a charity may have to contribute to a tax, in which event the amount contributed is not allowable as a charitable deduction (Internal Revenue Code, § 2055, subd. [c]).
To conclude it is our opinion that article Seventh of decedent’s will was effective (1) to shift the entire burden of taxation generated by the power of appointment to the appointive fund; and (2) to direct that the charitable recipients pay their prorata share of the taxes payable by the appointive fund.
Accordingly, the. order appealed from should be reversed.
*465 Chief Judge Fuld and Judges Bergan and Jasen concur; Judges Burke, Keating and Bkeitel dissent and vote to affirm op. the Surrogate’s opinion.
Order reversed, with costs payable out of the trust estate to all parties appearing separately and filing separate briefs and matter remitted to the Surrogate’s Court for further proceedings in accordance with the opinion herein.