John D. Bennett, S.
The executor, who filed a Federal estate tax return reporting a tax of $24,184.59 on account of which he has paid $17,000 and deposited $5,193.29 on account of the New York estate tax, seeks an order pursuant to EPTL 2-1.8 directing the widow, the sole legatee under decedent’s will and principal beneficiary of his nontestamentary assets, and the Phoenix Mutual Life Insurance Company, a Connecticut corporation which is holding the proceeds of a life insurance policy payable to decedent’s infant son under an income contract made by the decedent, to pay to petitioner the taxes which petitioner has allocated to their respective interests.
Decedent died a resident of Nassau County on July 20, 1971, survived by his widow, Fae, an infant son Theodore, and two adult children of a prior marriage, Robert and Susan. Testator gave his entire estate to his widow, naming Robert as executor. The will does not contain any tax exoneration clause.
The copy of the Federal estate tax return as filed by petitioner reports a gross estate of $453,352, consisting of the following: real property in New Jersey, $4,995; cash, $2,579; life insurance on decedent’s life payable to designated beneficiaries, $206,671; jointly held property payable to the widow, $28,843; miscellaneous property, $210,264 (all of which con *1008 sists of cemetery land purchase certificates and accruals with the exception of $5,275 due from a broker).
All of the insurance policies, with the exception of three, are payable to decedent’s widow. Two of the three aggregating $23,671 are payable to decedent’s adult children Robert and Susan equally. The third policy of $75,000 is payable to his infant son Theodore as primary beneficiary under the provisions of an income contract made by decedent with the company, whereby the income from the proceeds is payable to the infant’s mother Fae on behalf of her son until he attains age 21, at which time he will be entitled to receive the annual interest directly and withdraw up to $25,000 from principal. Upon attaining age 25 he will be entitled to withdraw an additional $25,000 and upon his attaining age 30 he will be entitled to withdraw the balance of $25,000. Under the terms of the supplementary contract no withdrawals from principal can be made nor can there be any commutation of installments or the exercise of any other option except as provided by the insured. The beneficiary cannot anticipate or alienate any of the benefits payable to him which are exempt from the claims of the beneficiary’s creditors as provided by law. The income contract expressly states that it was executed in Connecticut and subject to the laws of Connecticut though the policy was issued in connection with a group policy executed in New York.
Decedent’s widow filed an answer to the petition contending that the tax is excessive because of the excessive valuations reported by the petitioner; that since she is the sole legatee under the will, there are sufficient funds in the executor’s hands to pay the tax allocated to her interest in the estate without requiring her to pay any sums to the petitioner.
In his report, the guardian ad litem appointed by the court to protect the interests of the infant contends that under the Connecticut General Statutes (§ 38-161) the proceeds of the policy are exempt from claims of creditors of the beneficiary, and under the doctrine of comity this court lacks jurisdiction to compel the insurance company to contribute to the payment of the taxes resulting from the inclusion of the proceeds of the policy in decedent’s taxable estate.
The insurance company has filed an answer and cross petition conceding that the proceeds of the policy held by it under the income contract are properly includable in the decedent’s gross estate for Federal and New York tax pur *1009 poses; that there are no provisions for payment of estate taxes in either the policy or the supplementary income agreement; that it is a stakeholder and if payment is directed, that the court fix the amount to be paid and upon payment to petitioner, the mother of the infant be directed to return the income certificate to it for endorsement to reflect the payment and the resultant reduction of subsequent principal and income payments and that it be discharged from all further liability to the parties to this proceeding.
Subsequent to the filing of the briefs by the parties, the executor filed with the court a photocopy of the report of the Federal estate examination dated December 2, 1974, which indicates that the valuation of the cemetery land purchase certificates and accruals were increased in value by $173,370.50, claims decreased, of which more will be said further, by $35,671.30, resulting in an assessment of a deficiency of $26,015.21, making Federal estate tax liability $50,199.80 and also resulting in an increase in the New York estate tax.
At the outset it should be noted that this court is powerless to question the valuation or assessment made by the Internal Revenue Service for estate tax purposes (Matter of Mayer, 46 Misc 2d 537, 540; Matter of Lipshie, 30 Misc 2d 306, 311).
Section 2002 of the Internal Revenue Code (US Code, tit. 26, § 2002) makes the executor personally liable for the payment of the Federal estate tax by stating that "the tax imposed by this chapter shall be paid by the executor.”
Congress, in the case of insurance payable to a beneficiary includable in the gross estate, empowered the executor to recover the estate tax attributable to such insurance (§ 2206). A similar tax apportionment provision is provided for in section 2207 of the Internal Revenue Code for taxes generated by a power of appointment (Matter of King, 22 NY2d 456).
In Matter of King (supra, p 460) the court in discussing apportionment of taxes said: "Generally speaking, apportionment of taxes among the beneficiaries of an estate, or among persons receiving property which is included within an estate for tax purposes, is a matter of State law (Matter of Zahn, 300 NY 1, 10). There are, however, two exceptions to this general rule. The apportionment of taxes attributable to nonexempt insurance proceeds and property subject to a power of appointment is governed by Federal law (Riggs v Del Drago, 317 US 95; National State Bank of Newark v Nadeau, 57 NJ Super *1010 53; Kintzinger v Millin, 254 Iowa 173; Scoles, Apportionment of Federal Estate Taxes and Conflict of Laws, 55 Col L Rev 261, 286).” (Emphasis supplied.)
New York, when it enacted the Estate Tax Law (Tax Law, article 10-C), as distinguished from an inheritance tax, simultaneously passed section 124 of the Decedent Estate Law, the predecessor to EPTL 2-1.8. The constitutionality of section 124 of the Decedent Estate Law was sustained in Riggs v Del Drago (317 US 95) where the court held that the New York law was not in derogation of the Federal law but supplemented it. Thereafter many States including Connecticut enacted similar proration legislation (see CCH Federal Estate and Gift Tax Reporter, par 2490.16).
It is of no consequence whether the supplementary income contract was executed in Connecticut or New York. The executor is entitled under the Federal law to recover the taxes allocated to the insurance proceeds includable in the decedent’s gross taxable estate from the beneficiary since neither the will nor the policy provided to the contrary. In any event, the New York and Connecticut statutes (Conn. Gen. Statutes, §§ 12-401, 12-402) are similar and the results identical. The insurance policy payable to the infant beneficiary Theodore must bear its proportionate share of the estate taxes.
The estate taxes allocated to the insurance policy are not a debt or obligation of the decedent but of the beneficiary. The guardian’s reliance upon Klebanoff v Mutual Life Ins. Co. of NY (246 F Supp 935), Pearl v Goldberg (300 F2d 610) and the Connecticut General Statutes (§38-161) is misplaced. The Klebanoff and Pearl cases, (supra), are bankruptcy cases in which the court held that the creditors of the beneficiary could obtain the proceeds of the policy.
The payment of estate taxes in the case of insurance proceeds held by the company under various options has been succinctly set forth in Jessup-Redfield Surrogates Law and Practice (Vol 5, § 4300) as follows:
"(1) If the proceeds of the policy have not yet been paid, the tax is deductible from the proceeds.
"(2) If an installment contract has been issued, the contract is recalled and the tax is deducted from the proceeds.
"(3) If the proceeds of the policy have been paid, the beneficiary is liable for payment of the tax.
*1011 "(4) The insurer is liable for the tax only if it has not yet paid the proceeds.”
(See, also, Matter of Scott, 158 Misc 481, affd 249 App Div 542, affd 274 NY 538; cert den sub nom Northwestern Mut. Life Ins. Co. v Central Hanover Bank & Trust Co., 302 US 721; Matter of Shea, 63 Misc 2d 741.)
The infant’s mother is directed to return the certificate or policy to the insurance company, which is directed to pay to the executor the Federal and New York estate taxes that are to be apportioned to the policy payable to the infant Theodore in the order to be submitted by the petitioner, and modify the certificate to reflect the decrease in principal and the resulting reduction in interest payable under the terms of the contract.
Because the audit of the Internal Revenue Service resulted in the inclusion in the decedent’s gross estate of insurance policies payable to the decedent’s adult children, and disallowed their claims against the estate except to the extent of $8,134 each, both children will be required to pay to the executor the share of the estate taxes apportioned to the policies payable to them. This, however, poses a problem since Susan, now known as Susan Singer Kaplan, was not made a party to this proceeding. A supplemental citation is directed to be served on her or her waiver and consent obtained and filed.
Prior to the institution of this proceeding, Robert and Susan made a claim against the estate alleging that the testator, pursuant to a separation agreement with their mother, was obligated to carry $40,000 of insurance on his life payable to them as irrevocable beneficiaries. The decedent at his death carried $23,671.30 payable to them. Following a hearing, this court rendered a decision dated May 31, 1973 upon which an order was made dated August 22, 1973 finding that the decedent breached his agreement with his wife for the claimants’ benefit. The court found that each child was entitled to recover from the estate the difference between $20,000, the amount of insurance decedent was required to carry, and the $11,835.65 carried so that each was entitled to $8,164.35, but disallowed the remainder of their claims. The fact that the decedent was contractually obligated to carry these policies for the benefit of his children does not necessarily mean that the claim is allowable as a claim for tax purposes. (Matter of Howe, 207 Misc 972, affd 286 App Div 892, affd 309 NY 1013; with the same result in Chemical Bank New York Trust Co. v United States, 249 F Supp 450, 249 F Supp 461. See, also, 59 *1012 ALR3d 9, 20, Divorce — Maintenance of Life Insurance; and Ann 59 ALR3d 969, Devise or Bequest Pursuant to Testator’s Contractual Obligation as Subject to Estate, Succession, or Inheritance Tax.)
Though the petition does not so allege, the attorney for the petitioner has informed court personnel during the course of a conference had in this matter, that the estate lacks sufficient liquid assets with which to pay the estate taxes assessed against the estate. To obtain such additional assets he alleges that the petitioner will be required to sell decedent’s interest in the cemetery land purchase certificates at a substantial loss. A forced sale would be detrimental to the surviving widow who, in addition to receiving all of the assets set forth above, was paid $88,829 as the beneficiary of a qualified pension plan which under subdivision [a] of section 401 of the Internal Revenue Code, was not included in the gross estate. EPTL 2-1.8(subd. [g]) in part permits the "fiduciary to collect the apportioned amounts from the property or interests in his possession of any persons against whom such apportionment has been made”. In the event that the surviving spouse does not pay to petitioner the taxes allocated to her interests as set forth in the order to be signed, the petitioner will have to dispose of sufficient cemetery land purchase certificates to pay such taxes.