*925 OPINION OF THE COURT
Renee R. Roth, S.
Testator’s widow, Suzanne Darrow, has filed several objections to the account of the executor.
Testator, Richard W. Darrow, died in 1976; his will and codicil were admitted to probate in the same year. He was survived by his wife, Suzanne and two adult sons of a prior marriage. His divorced wife, Nelda, also survived.
Testator’s widow in objections Nos. 1, 2, 3, 4, 5 and 7 has raised novel issues with respect to the apportionment of Federal and State estate taxes in the executor’s account.
A brief history of the family is relevant to an understanding of these objections.
Testator married Nelda, his first wife, in 1938. They were divorced in 1975 and testator married Suzanne shortly thereafter.
Prior to the divorce, testator and Nelda entered into a separation agreement which was incorporated but not merged into the judgment of divorce granted in New York County on September 9, 1975.
Under this agreement, testator made generous provision for Nelda’s support during his lifetime. Among the provisions to secure support of Nelda after his death, testator agreed to leave one half of his residuary estate, as defined in the agreement, in trust for Nelda and gave her a power to appoint the remainder of her trust.
Concerning this provision, paragraph 13 of the separation agreement specifies: “This share shall be subject to its pro rata share of estate taxes, if any.”
In compliance with this agreement, testator in article VIII of his will divided his residuary estate into two trusts. One trust is to provide income for the benefit of his first wife Nelda; the second is to provide income for the benefit of his surviving wife, Suzanne.
Each “wife”, therefore, received a residuary trust the principal of which, at least on its face, would be equal.
Decedent’s will contained a tax clause (article XI) providing that all legacies and transfers shall bear their proportionate share of estate taxes. This direction is in *926 conformity with EPTL 2-1.8. However, there is an additional direction in the will, namely, the direction that “no taxes shall be assessed or paid against any share of my estate which is not subject to tax.”
Federal law, of course, determines which property shall be included in a decedent’s taxable estate (Internal Revenue Code of 1954, US Code, tit 26, §§ 2051-2056). The governing Federal law is incorporated into New York law (Tax Law, § 951). Moreover, a final Federal determination is determinative with respect to property includable in the taxable estate for New York estate tax purposes unless shown by a preponderance of the evidence to be erroneous (Tax Law, § 961).
In the Federal estate tax proceeding, the executor contended that under the provisions of the separation agreement, testator was obligated to leave his former wife Nelda one half of his residuary estate, that her trust therefore was in fulfillment of that obligation and thus a “debt” of the decedent deductible as such in computing the taxable estate. (Internal Revenue Code, § 2053; Harris v Commissioner, 340 US 106.)
The commissioner accepted the executor’s reasoning and by a letter of final determination dated May 22, 1979, allowed the entire value of Nelda’s one-half residuary trust of approximately $722,000 to be deducted as a “debt”.
This substantial deduction reduced testator’s adjusted gross estate to $1,040,000. Consequently, the value of the one-half residuary trust for the widow, plus other testamentary benefits received by her, exceeded the allowable Federal estate tax marital deduction in effect in 1979.
Thus, under article XI of the will and the tax apportionment direction contained in EPTL 2-1.8, the widow’s benefits in excess of the marital deduction were required to bear their share of Federal and New York estate taxes aggregating approximately $142,000. Suzanne’s share of the taxes was $122,000; Nelda’s share was only $3,000 and the balance of $17,000 was apportioned against other beneficiaries.
Thus, Suzanne’s objections (Nos. 1, 2, 3, 4, 5 and 7) are that the accounting executor breached his fiduciary duty, *927 not to the estate, but specifically to her by having successfully claimed that Nelda’s one-half residuary trust was a debt of the estate. Consequently, because of the additional estate tax burden on Suzanne’s one-half residuary trust, the principal of that trust, in actuality, is less than Nelda’s one-half residuary trust. This will also result in a lower income distribution to Suzanne.
It is interesting to consider the tax consequences in rough terms under Suzanne’s theory and assuming that Nelda’s trust of $722,000 was included in the taxable estate:
(1) The total estate tax would be $278,000 instead of $142,000, an increase of $136,000;
(2) The share of estate tax apportioned against Nelda’s interest would be $230,000 instead of $3,000, an increase of $227,000;
(3) The share of estate taxes apportioned against Suzanne’s interest would be $26,000 instead of $132,000, a reduction of $96,000;
(4) The share of estate taxes apportioned against the interests of all the other beneficiaries would be $21,000, instead of $17,000, an increase of $4,000.
Obvibusly, the only person who would benefit from the inclusion of Nelda’s residuary trust in the taxable estate is Suzanne, and of course, the Federal and State treasuries!
These principal objections enumerated above will be considered after disposition of the other objections filed by Suzanne. However, in evaluating all of the objections, it is important to recall some fundamental principles of estate administration.
First, an executor owes a duty to all beneficiaries to be fair and impartial in all transactions that affect them; not preferring one to the detriment of others or conferring a benefit upon one. at the expense of another. (Matter of Muller, 24 NY2d 336, 341; Matter of Bush, 2 AD2d 526, affd 3 NY2d 908; Matter of Heinrich, 195 Misc 803, 809; Matter of James, 86 NYS2d 78, 89.) Hence, neither the surviving spouse nor any other beneficiary has a right to expect that the executor will discriminate in his or her favor to the detriment of another. The executor must act in *928 the best interests of the estate as a whole, which may incidentally benefit some beneficiaries more than others but not because of any partiality on his part.
Secondly, an executor does not assess a tax on decedent’s estate; that is the function of the taxing authorities. An executor has, however, an obligation to report all of the property that is by law subject to tax at its fair and reasonable value. In addition, the executor has an obligation to take such deductions, credits and exemptions as the law allows and the best interests of the estate dictate. As we all know, the taxing authorities frequently do not accept the executor’s determinations. The estate’s interest in reducing the tax and the government’s interest in collecting all it can under the law are clearly conflicting interests.
Third, the appointment of estate taxes commences at the point the taxing authorities complete their task of fixing the tax. Surrogate Delehanty in Matter of Kaufman (170 Misc 436, 445), observed that: “The court is bound by the actual fact of inclusion or exclusion of property by the taxing authorities * * * The court begins its allocation task at the point where the taxing authorities terminate their work of fixation of gross tax. The court is not a reviewing body. It may not say that something else should have been done by the taxing authorities that [sic] in fact was done. It takes the accomplished fact of taxation and then allocates the burden on the basis of actuality of tax.”
New York’s tax apportionment statute, EPTL 2-1.8 (subd [c], par [1]), contains a similar statement of principle: “the values as finally determined in the respective tax proceedings being the values to be used as the basis for apportionment of the respective taxes”. Obviously, if any property is excluded from the taxable estate, that fact is determinative.
We turn now to the other objections filed by Suzanne.
Objection number 6 relates to a lump-sum distribution.
Testator was an employee of Hill & Knowlton, Inc., and a participant in its profit-sharing plan. During his lifetime he designated his estate as the beneficiary of the fund. This designation alone required his executor to include these *929 benefits in the gross taxable estate (Internal Revenue Code, §§ 2033, 2039).
Thus, as required by law, the executor included the lump-sum distribution of $486,524 in schedule H of the estate tax return.
Thereafter, on his Federal fiduciary income tax return for the estate’s first fiscal year, the executor exercised all the elections available because of the inclusion of the lump sum in the taxable estate.
Because the lump-sum distribution was subject to both estate tax and income tax, under section 691 of the Internal Revenue Code, the executor deducted from income the sum of $32,000, which was equivalent to the estate taxes attributable to the inclusion of the lump sum.
In objection number 6, Suzanne contends that the executor “subjected the same item to a double tax.” As previously discussed, once the decedent during his lifetime designated his estate as the beneficiary of the lump-sum benefit of his employer’s profit-sharing plan, the executor was compelled to include the payment in the taxable estate.
The estate tax attributable to the inclusion in the taxable estate was then available as a deduction from income for tax purposes. Moreover, there is a favorable income tax advantage gained by including such lump sum in the taxable estate. The executor proceeded as the law required and there is no evidence of negligence in respect to either the income or estate tax return.
Objection number 6 is therefore dismissed.
Objection number 8 relates to the specific disposition of Ohio real property.
Under article VII of his will, testator made a specific disposition of this real property to his sons. For the purposes of both Federal and Ohio estate tax, the executor included this property in his tax returns at the appraised value of $30,000. The sons subsequently sold the property for $49,500. During the estate tax audit, the valuation was increased to $49,500, the gross sales price.
As a result of the increased valuation, the specific devisees, testator’s sons, received a higher basis, thus avoiding *930 capital gains tax on the earlier sale. Under the provisions of the will, the increased estate tax, about $1,200, was apportioned against the sons’ benefits from the estate. No part of the increased tax was payable or paid by Suzanne.
Suzanne’s objection that the executor was unjustified in accepting the increased valuation of the Ohio real property is therefore mistaken.
As previously discussed, this court is bound by the fixation by the taxing authorities of the value of the property in the taxable estate. While the executor obtained an appraisal of this real property, the taxing authorities refused to accept that valuation and instead used the actual sales price. No fault can be found with the executor’s action. Objection number 8 is thus dismissed.
The remaining objections to be discussed all relate to the executor’s exclusion of Nelda’s one-half residuary trust from the adjusted gross estate as a debt.
Although both the estate and Nelda benefited from this deduction, Suzanne, clearly, did not. The principal of Suzanne’s one-half residuary trust is reported in schedule E of the executor’s account as $503,000, while the principal of Nelda’s one-half residuary trust is $590,000. For the period of the account, March 20, 1976 to July 3, 1981, the income received by Suzanne is $53,400, while Nelda received $78,400.
As noted previously, Federal law determines what is includable and deductible in the taxable estate and these governing provisions are incorporated in New York State tax law. State law, however, controls the apportionment of the tax (Riggs v Del Drago, 317 US 95, 97-99).
Under New York law, governed by EPTL 2-1.8, a testator, by direction in his will, may specifically determine how the tax shall be apportioned. Absent such direction in a will, the provisions of the statute control.
In this case, testator did make or attempted to make, a provision for apportionment of taxes under articles III-A and XI of his will and also under paragraphs 13 and 14 of the separation agreement. The directions made by the testator conform to the provisions of EPTL 2-1.8, in that estate taxes were required to be apportioned among “all *931 persons benefited.” However, neither a statute nor a provision in a will can direct that taxes be apportioned against a creditor of an estate. There have been instances where courts have interfered with disparities in the apportionment of estate taxes on equitable principles. With these general principles in mind, we now turn to the cases.
The leading case is Matter of Brokaw (180 Misc 490, affd 267 App Div 811, affd 293 NY 555). In his separation agreement, Mr. Brokaw made provision for the support of his first wife during her lifetime. To assure this payment of support, he created an inter vivas trust in the amount of $425,000 which was sufficient to meet the payments both during his life and after his death.
In his will, Mr. Brokaw directed that all estate taxes on testamentary dispositions were to be paid out of his residuary estate. He did not, however, make any direction with respect to the inter vivas trust, which was a nontestamentary asset.
All the courts held that under section 124 of the Decedent Estate Law (now EPTL 2-1.8), this direction in the will did not exonerate the principal of the trust from liability for estate tax.
The executors claimed the principal of the trust as an indebtedness. The major part of that contention was disallowed. An estate tax of $40,000 was paid on that part of the principal which was included in the adjusted gross taxable estate. The executors then sought to apportion the $40,000 against the inter vivas trust.
Surrogate Foley held that the trust was not liable for any portion of the estate tax, reasoning that the creation of the trust was not voluntary. In fact, the trust was created to pay a legal obligation fixed in the separation agreement and judgment of divorce where it was agreed by the parties that the principal sum of $425,000 would be sufficient to meet that obligation. Neither party agreed to the amount of $425,000 minus estate tax as the principal of the trust.
Thus Surrogate Foley held that upon the creation of the inter vivas trust, the wife became a “paid creditor” and as such was not “a person benefited” who could be required to contribute to estate taxes. The decision was affirmed by both the Appellate Division and the Court of Appeals.
*932 The property in issue in Matter of Brokaw (supra) was included under Federal law in the taxable estate. Despite such inclusion, Surrogate Foley held that the resulting estate tax could not be apportioned against the former wife because under State law she was a creditor!
It should be observed that the facts in the present case are different from those in Brokaw (supra) in that the property at issue here was excluded from the decedent’s taxable estate. Therefore, no tax resulted which could be apportioned against any “person benefited” from decedent’s estate.
In a series of cases decided before and after Brokaw (supra), other Surrogates reached the same conclusion. In each case, the provisions in the will did not exonerate the testamentary or nontestamentary benefit for the former wife or widow from its allocable share of estate taxes. In each case, under Federal law the benefit was included in the testator’s taxable estate and taxed as such. Nevertheless, in each case, the Surrogate concluded that the former wife or widow was either a paid creditor or a contract creditor against whom no part of the estate tax could be apportioned under State law.
Some of these cases and the issues involved are as follows: Matter of Strebeigh (176 Misc 381), which concerned a testamentary trust for support of a divorced wife; Matter of Porter (12 Misc 2d 180) and Matter of Fells (65 NYS2d 553) both involved widow’s insurance proceeds payable pursuant to a separation agreement; the tax consequences of a testamentary disposition of one third of a net estate pursuant to a separation agreement were decided in Matter of Cordier (1 Misc 2d 887); in Matter of McKeon (4 Misc 2d 931), there was an inter vivas trust to secure support pursuant to a separation agreement; and in Matter of Vernon (107 Misc 2d 1021), at issue were testamentary trusts for the benefit of two sons of a former wife pursuant to a separation agreement.
In some other cases, Surrogates, distinguishing Brokaw (supra), have held that benefits for a former wife or widow did not make her a creditor and required her to pay proportionate share of estate taxes imposed under Federal law. (Matter of Lipshie, 30 Misc 2d 306, which involved *933 payments to a widow from a salary continuation plan of decedent’s employer pursuant to an antenuptial agreement; Matter of Arnold, 36 Misc 2d 695, concerned an inter vivas trust for the benefit of decedent’s former wife pursuant to a separation agreement; insurance proceeds for the benefit of testator’s children pursuant to a separation agreement with their mother were the subject of Matter of Singer, 80 Misc 2d 1006; and Matter of Dominick, 90 Misc 2d 1017, decided the effect of inter vivas trusts, remainder to testator’s estate from which to pay support to two divorced wives.)
Although some of the decisions cited in the two lines of cases above can be distinguished on the facts, all cases are, however, consistent in one respect. In every case when apportionment was directed, the property involved had been included under Federal law in testator’s taxable estate.
We have not found any decision in this State which holds that a part of the estate may be apportioned against a person who receives a benefit which was not included in the taxable estate. The rationale is obvious; recipients of assets which create a tax ordinarily bear the tax burden. Recipients of assets that are not taxable should not share in the tax burden. The latter include dispositions to charity or to a surviving spouse eligible for the charitable or marital deduction (Internal Revenue Code, §§ 2055, 2056) and dispositions or other nontestamentary provisions for the benefit of a former spouse which qualify as a claim against the estate (Internal Revenue Code, § 2053).
There are cases where persons who receive indirect benefits have been required to contribute toward estate taxes on equitable principles.
The leading case in New York is Matter of Galewitz (3 AD2d 280, affd 5 NY2d 721). In that case the testator had entered into a buy-sell contract with his son, the other shareholder in the family corporation, whereby on the death of one of them, the survivor had an option to purchase the decedent’s stock at a price determined according to a formula which liberally discounted assets and permitted payment in installments over a period of years. The Internal Revenue Service determined that the contract *934 price of $600,000 undervalued the asset and appraised decedent’s share at $1,200,000. The son commenced an action for specific performance at the contract price. The court held the contract enforceable (Matter of Galewitz, 206 Misc 218, affd 285 App Div 947).
However, the tax obligation of the buyer under section 124 of the Decedent Estate Law (now EPTL 2-1.8) was something different. That statute was said to be
“ancillary to the tax laws in their effect on decedents’ estates. It is not primarily designed to enforce the laws of contract or those governing distribution of decedents’ estates * * *
“On this analysis, section 124 directs the apportionment of taxes assessed on the excess value of the Clinton shares on the buyer, the person ‘benefited’ by the transfer of that excess value * * * This does not impair the buyer’s obligation, because the parties, as a matter of law, must have contracted with reference to, and in contemplation of, the tax laws and their impact, when the transfer was to take effect * * * Moreover, section 124 places the duty to pay the apportioned tax directly on the transferee, and provides for its enforcement * * *
“On this view, the validity of the option and its method of price-determination are given complete effect. The tax laws are also not denied, as they may not be. The tax apportionment statute is given the very effect that its plain language requires.” (3 AD2d, at p 293.)
Thus, the option, though valid under contract law, had under tax law the status of a transfer that was part sale, part gift.
Galewitz (supra) has thus perhaps cast some doubt on the soundness of the line of decisions that holds that a creditor is not a “person benefited” under the tax apportionment statute and that no tax may be imposed upon a transfer based upon a valid contract. However, unlike the facts in Galewitz, in this instance, no part of the transfer to Nelda was taxed. Therefore, there is no basis for allocating any portion of the estate tax against Nelda’s trust.
Finally, we return to the separation agreement and the will. The agreement provides that the legacy for Nelda *935 “shall be subject to its pro rata share of taxes, if any” (emphasis added) and testator’s will explicitly directs that “No taxes shall be assessed or paid against any share of my estate which is not subject to tax.” Clearly, the language in both documents supports the position that no tax can be apportioned against Nelda’s share.
In any event, objectant Suzanne Darrow, decedent’s surviving spouse, has not sought contribution from Nelda, the former wife. Suzanne’s objections request the court to surcharge the executor for successfully claiming Nelda’s residuary trust as a debt of the estate and receiving for it an estate tax deduction. For the court to do so would impose a sanction upon the executor for following the directions in article XI of decedent’s will and for exercising a right given the estate under Federal law which resulted in reducing estate taxes by approximately $136,000. The court can find no justifiable reason to comply.
Objections numbers 1,2, 3,4, 5 and 7 are thus dismissed.
In addition to filing these objections, Suzanne Darrow has requested that the executor and trustee, John H. Morse, be removed as trustee of the trust for her benefit. For the reasons stated previously, there is no basis for such removal at this time. Accordingly, this request is denied.
It should be observed that the disparity thus created between the benefits received by the surviving and divorced spouses is not altogether unusual. Courts have recognized the fact that a widow’s share in her husband’s estate may be diminished whenever benefits for a former spouse are held to be debts of the estate (Matter of Fox, 109 Misc 2d 634, revd 94 AD2d 662; cf. Wagner v Wagner, 58 AD2d 7, affd on opn below 44 NY2d 780; compare Matter of Dunham, 63 Misc 2d 1029, affd 36 AD2d 467, mot for lv to opp den 29 NY2d 485). A number of decisions also hold that such an indebtedness will likewise reduce the elective and intestate shares of a surviving spouse (supra).